775 F.2d 751
 Louise BIZZARRI, Petitioner-Appellant,
v.
CONSOLIDATION COAL COMPANY, Employer-Respondent.
Director, Office of Workers' Compensation Programs, United
States Department of Labor; Benefits Review
Board, Party-In-Interest-Respondents.
 No. 84-3792.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 29, 1985.
Decided Oct. 28, 1985.
 
 Edmund A. Sargus, Jr. (argued), Burech & Sargus, St. Clairsville, Ohio, for petitioner-appellant.
 Benefits Review Board, U.S. Dept. of Labor, Office of the Solicitor, U.S. Dept. of Labor, J. Michael O'Neil, Roscoe C. Bryant, III, Washington, D.C., Laura E. Beverage (argued), Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for respondents.
 Before MERRITT and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Petitioner Louise Bizzarri appeals a decision of the Benefits Review Board of the Department of Labor (Board) denying her widow's benefits under the Black Lung Benefits Act of 1969, as amended, 30 U.S.C. Sec. 901 et seq. The Act provides for payment of benefits "in respect of any miner whose death was due to pneumoconiosis, or ... who at the time of his death was totally disabled due to pneumoconiosis." 30 U.S.C. Sec. 921(a). The Act goes on to presume certain miners, or their eligible survivors, entitled to benefits upon certain threshold showings. Utilizing these presumptions, the administrative law judge (ALJ) determined that petitioner was entitled to benefits under Sec. 921(c)(5)[1], or alternatively under Sec. 921(c)(2).[2] On appeal by the employer, the Board concluded that the ALJ's determination was not supported by substantial evidence and accordingly reversed. Petitioner properly appealed to this court under 33 U.S.C. Sec. 921(c). The only issues on appeal are whether the ALJ's determinations were supported by substantial evidence.
 
 
 2
 The parties agree for purposes of this appeal that petitioner satisfies the initial requirements of both sections of the Act, as the widow of a deceased coal miner with sufficient tenure. The parties disagree over the ALJ's determination that the miner died or was disabled as a result of black lung.
 
 
 3
 Section 921(c)(5) automatically entitles the widow of a twenty-five year veteran of coal mine work to benefits, unless the employer "establishes" that the miner was not at least partially disabled due to black lung. The ALJ found that petitioner was entitled to this "widow's presumption," and that the employer had failed to rebut the presumption.
 
 
 4
 In addition, the ALJ found petitioner entitled to benefits under the unrebutted presumption of Sec. 921(c)(2). That section creates a presumption that a miner with ten years service, who died from a respirable disease, died of black lung. The implementing regulations permit invocation of the presumption if the evidence shows that: (1) the miner had pneumoconiosis or a respirable disease, (2) the miner's death "may have been" due to multiple causes, and (3) it is "not medically feasible" to determine which disease caused death, or specifically how much each disease contributed to cause of death. 20 C.F.R. Sec. 410.462(b); Wallace v. Mathews, 554 F.2d 299 (6th Cir.1977).
 
 
 5
 In finding for petitioner, the ALJ relied primarily on her lay testimony, and on the medical report of the miner's treating physician, Dr. Lewis. The record establishes that in 1965, the miner suffered the first of three heart attacks, the last of which occurred in 1973. From 1965 until the miner's death, Dr. Lewis treated him for the symptoms of the heart condition. Medical records resulting from that treatment made no reference to black lung, and x-ray reports consistently described the miner's lungs as "clear." Despite the lack of x-ray corroboration,[3] an autopsy definitely revealed the presence of severe black lung at the miner's death in 1976.
 
 
 6
 Petitioner testified that her husband increasingly had suffered from shortness of breath during the last years of his life, and that this had interfered with the exertional aspects of his job as a supervisor. She noted that he frequently came home from work exhausted, and that whenever his job required him to climb hills or stairs, he would have difficulty. Dr. Lewis corroborated the reports of shortness of breath (dyspnea), and in his report also noted that the miner had complained of dyspnea and morning cough with increasing frequency in the last two to four years of his life. On the basis of these symptoms, together with the uncontested presence of black lung, Dr. Lewis concluded that the miner's pulmonary condition had "contributed to his demise."The employer challenged the conclusion that the lung condition had contributed either to partial disability or to death. In addition to the autopsy report, which assigned cause of death to heart attack, the employeroffered as proof two medical reports from non-treating physicians, both of whom conceded the presence of pneumoconiosis, but disagreed with Dr. Lewis's conclusion that the disease had contributed to the miner's death.
 
 
 7
 Dr. Hansbarger, a pathologist, concluded upon review of lung slides and the autopsy report that death had resulted from a heart attack, the end result of arteriosclerotic coronary heart disease. A third physician, Dr. Kress, examined the autopsy report and the miner's records from treatment with Dr. Lewis. Dr. Kress agreed with the autopsy report's conclusion of death due to heart attack, noting that shortness of breath may be a symptom either of black lung or of heart disease. Dr. Kress opined, based on the lack of any reference to black lung or pulmonary problems in any of Dr. Lewis's treatment records and on the unquestioned history of heart disease, that the latter, not the former, had been the contributing cause of the miner's death.
 
 I. STANDARD OF REVIEW
 
 8
 The statute provides that findings of fact by an administrative law judge shall be conclusive in cases before the Benefits Review Board "if supported by substantial evidence in the record as a whole." 33 U.S.C. Sec. 921(b)(3). The Board is not empowered to engage in de novo review of the record, 20 C.F.R. Sec. 802.301, and may not set aside an inference merely because it finds the opposite one more reasonable. Peabody Coal Co. v. Benefits Review Board, 560 F.2d 797, 802 (7th Cir.1977). This court has held that it is "immaterial that the facts permit the drawing of diverse inferences," Parker v. Director, 590 F.2d 748, 749 (8th Cir.1979), and has noted that the Board must affirm the ALJ if his or her decision is supported by substantial evidence and is not irrational. Moore v. Califano, 633 F.2d 727, 729 (6th Cir.1980).
 
 
 9
 Thus, the test in the instant case is not whether the Board's decision is supported by substantial evidence, but whether the Board was correct in concluding that the ALJ's decision was not supported by "substantial evidence."[4] Much ink has been spent by federal courts attempting to elucidate what constitutes "substantial evidence" under the presumptions established by the Black Lung Benefits Act. Dictum in an earlier Sixth Circuit case suggests that the sort of presumption contemplated by the statute merely shifts the burden of production to the employer, leaving the claimant with the burden of persuasion. Prokes v. Mathews, 559 F.2d 1057 (6th Cir.1977).[5] On this view, the presumption itself could not stand as "substantial evidence" to support a finding of disability, but would require corroboration from testimony or other evidence.
 
 
 10
 In contrast, the Eleventh Circuit has held that, at least when the statutory language requires that the evidence "establish" the miner's lack of entitlement, the burden of persuasion also shifts to the employer. Alabama By-Products v. Killingsworth, 733 F.2d 1511, 1514 (11th Cir.1984). The court found that language requiring the employer to "establish" absence of black lung under 30 U.S.C. Sec. 921(c)(4), 20 C.F.R. Sec. 727.203(b) "is clearly synonymous with 'prove'." Id. The court relied also on the regulation's requirement that the factfinder consider "all relevant medical evidence" to determine if the presumption has been rebutted, as an indication that the legislature intended that the employer persuade the factfinder after consideration of both sides. Id. On this view, the presumption takes on independent evidentiary value, and might support, in appropriate circumstances, a finding of entitlement even in the absence of corroborating evidence. We note that other circuits are in accord with the Alabama By-Products rule. United States Steel Corp. v. Gray, 588 F.2d 1022, 1028 (5th Cir.1979); Rose v. Clinchfield Coal Co., 614 F.2d 936, 939 (4th Cir.1980); Ohler v. Secretary, 583 F.2d 501, 506 (10th Cir.1978).
 
 
 11
 We recognize that such a difference of opinion over the nature of the evidence needed to support a finding might lead to conflicting results in certain cases. We find it unnecessary, however, to resolve this conflict in the instant case, because we conclude that the ALJ's determination of Mrs. Bizzarri's eligibility for benefits is supported by substantial independent evidence in the record. Accordingly, we do not reach the question of whether the presumptions in Secs. 921(c)(5) and (c)(2) would support the ALJ's findings in the absence of substantial corroborating evidence.
 
 II. SUBSTANTIAL EVIDENCE
 
 12
 The ALJ found petitioner entitled to benefits on two independent grounds: the presumption of disability due to pneumoconiosis under Sec. 921(c)(5), and the presumption of death due to pneumoconiosis under Sec. 921(c)(2). Because we conclude that substantial evidence supports the latter determination, we find it unnecessary to reach the former. 30 U.S.C. Sec. 921(c)(2) provides that a coal miner with at least ten years of mining experience, who died of a "respirable disease," is presumed to have died from black lung. When the evidence establishes that death may have been due to multiple causes, and that it is medically unfeasible to distinguish cause of death--or to determine how much each disease contributed to death--the eligible survivor is entitled to the presumption. 20 C.F.R. Sec. 410.462(b). The ALJ must be affirmed if substantial evidence supports his conclusions that: (1) Mr. Bizzarri had pneumoconiosis at the time of his death, (2) his death "may have been" due to multiple causes, and (3) it is medically unfeasible to determine which disease caused death.
 
 
 13
 In the instant case, it is undisputed that Mr. Bizzarri had pneumoconiosis at the time of his death. Thus, the first prong of the test is satisfied. As to the second and third prongs, the ALJ relied on the report of the treating physician, Dr. Lewis. Based on the unquestioned presence of black lung, together with the progressive symptoms of morning cough and exertional shortness of breath, Dr. Lewis opined that, "Mr. Bizzarri did indeed have severe pneumoconiosis and I believe this condition contributed to his demise." Director's Exhibit No. 9.
 
 
 14
 Taken alone, this opinion satisfies the prerequisites of the regulation. The doctor opined at least that death "may have been due to multiple causes," and he apparently was unable to state with medical certainty which possible cause was primarily or exclusively responsible. The fact that Doctors Kress and Hansbarger reached a contrary conclusion from Dr. Lewis bolsters the ALJ's determination that it was not medically feasible to assign the cause of the heart attack either to heart disease or black lung alone. Indeed, Congress, in enacting the 1977 amendments, recognized that a death certificate indicating " 'heart failure' may describe the immediate cause of death, but the underlying etiology [may] too often remain ... undiscovered or unmentioned." S.Rep. No. 209, 95th Cong., 1st Sess. 18 (1977). Dr. Kress's own report--indicating the clinical impossibility of assigning the miner's symptoms to one or the other disease--demonstrates that any medical opinion interpreting those symptoms must necessarily lack medical certainty.
 
 
 15
 The employer argues, however, that the ALJ erred in invoking the presumption, because "the credible, probative evidence established clearly that death was due to the miner's longstanding coronary insufficiency...." The employer points to the absence of any suggestion of pulmonary dysfunction in the autopsy report or in Dr. Lewis's pre-1973 records of treatment for heart condition; the opinions of Doctors Kress and Hansbarger; and the "unsubstantiated" nature of Dr. Lewis's conclusion. Brief of Respondent at 28-31. In effect, the employer's argument is that Dr. Lewis's opinion does not represent "substantial evidence" for invoking the presumption. Alternatively, if the presumption was properly invoked, the employer relies on the same facts and argument to show that its other evidence clearly rebutted it.
 
 
 16
 This court has not specifically addressed the sufficiency of evidence needed to invoke the Sec. 921(c)(2) presumption.[6] We find it unnecessary to perform any such nice analysis here, because we conclude that Dr. Lewis's opinion easily represents substantial evidence for the conclusion that pneumoconiosis contributed to the miner's death.
 
 
 17
 Dr. Lewis had treated Mr. Bizzarri for a period of eleven years, and had observed the progressive increase in his symptoms of morning cough and shortness of breath. The fact that the doctor's reports make no reference to pneumoconiosis is of no consequence, because he was treating symptoms that were consistent with the known diagnosis of heart disease. The lack of reference to pneumoconiosis may be attributed to the fact that the only x-rays available--all taken before 1974--had described the lungs as "clear." Dr. Lewis's report indicated that the disabling symptoms had appeared, or at least worsened, in the last two to four years of the miner's life. Since no x-rays were taken during that period, it is uncertain at what point Mr. Bizzarri's pneumoconiosis would have been sufficiently severe to appear on the films. With the benefit of hindsight provided by the autopsy report, it was certainly not unreasonable for Dr. Lewis to conclude that the symptoms he had recently observed had resulted in part from the miner's lung condition. A medical opinion based on such facts and observations at least constitutes substantial evidence for the ALJ's conclusion. We decline to accept respondent's argument that, as a matter of law, Dr. Lewis's report may not constitute substantial evidence.
 
 
 18
 We hold that, viewing the record, including respondents' rebuttal evidence, as a whole, Dr. Lewis's medical opinion that Mr. Bizzarri's death resulted in part from pneumoconiosis constitutes substantial evidence for the ALJ's finding to that effect. We further hold that substantial evidence supports the ALJ's conclusion that the other essential elements for a presumption of death due to pneumoconiosis under 20 C.F.R. Sec. 410.462(b) had been established. Where evidence is substantial enough to invoke this presumption, and the ALJ awards benefits relying on the presumption, that evidence is substantial enough to support an award of benefits.[7] It follows that the Benefits Review Board erred in overturning the decision of the ALJ.
 
 
 19
 The decision of the Benefits Review Board is Reversed and the case is Remanded to the Secretary for an award of benefits to petitioner.
 
 
 
 [1]
 "In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits ... unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis."
 
 
 [2]
 "If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease, there shall be a rebuttable presumption that his death was due to pneumoconiosis."
 
 
 [3]
 The last x-rays showing the miner's lungs were taken in 1973, three years before his death in 1976. Therefore, no doctor viewed the condition of the miner's lungs in the three years before his death
 
 
 [4]
 Substantial evidence is a lower standard than preponderance of the evidence. This circuit has defined it as "not necessarily a preponderance of the evidence, but it is more than a scintilla ... [that which] a reasonable mind might accept as adequate to support a particular conclusion with reference to the record as a whole." Parker v. Director, 590 F.2d 748, 749 (8th Cir.1979)
 
 
 [5]
 A more recent Sixth Circuit opinion intimates that this court has not ruled out the possibility of following the lead of the other circuits. Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 486 (6th Cir.1985) (20 C.F.R. Sec. 727.203(b)(2) presumption rebutted by employer "showing through medical evidence that Ramey [claimant] was physically capable of working in the mines ...") (emphasis added)
 
 
 [6]
 The Fourth Circuit has concluded that the presumption that black lung is present --based on a different statutory presumption arising from evidence that some totally disabling respiratory ailment is present (20 C.F.R. Sec. 727.203(a)(4))--may not be invoked unless the claimant establishes by a preponderance of the evidence all facts necessary to establish the presumption. Consolidated Coal Co. v. Sanati, 713 F.2d 480, 481-82 (4th Cir.1983). The Sanati court vacated a grant of benefits based on one doctor's opinion, and remanded for a weighing of that opinion against the other contrary opinions in the record
 
 
 [7]
 Because we hold that the ALJ's award of benefits is supportable on the basis of the Sec. 921(c)(2) presumption, we do not reach the question of whether Dr. Lewis's opinion alone would support an award of benefits without regard to the presumption. Dr. Lewis opined that pneumoconiosis had "contributed to" the miner's death; the statute, however, permits an award of benefits only when death "was due" to pneumoconiosis, 30 U.S.C. Sec. 921(a). We expressly reserve consideration of whether this statutory language would support an award of benefits where, as here, the opinion was that black lung only "contributed to" the death. We note, however, that an ALJ, in his or her capacity as trier of fact, might in appropriate circumstances construe language such as that contained in Dr. Lewis's report as an opinion that death "was due" to pneumoconiosis. We decline speculation as to when circumstances would be appropriate, but note that among the factors an ALJ might consider surely would be the presence in the record of other evidence supporting such a conclusion. Although appropriate facts do not appear to be present in this case, in a proper case such a construction would be entitled to deference on appeal