798 F.2d 469
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frances DAY, Widow of Wilson Day, Petitioner,
v.
BETH-ELKHORN CORPORATION, et al., Respondents.
 No. 85-3484.
 United States Court of Appeals,
Sixth Circuit.
 June 2, 1986.
 
 Before ENGEL, CONTIE and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Frances Day, widow of Wilson Day, seeks review of an order of the U.S. Department of Labor Benefits Review Board affirming the Secretary's denial of Frances Day's claim for benefits under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. Sec. 901 et. seq. For the reasons that follow, the petition for review is denied.
 
 I.
 
 2
 On December 3, 1974, Frances Day filed a claim for benefits under Part IV of the Act as widow of Wilson Day, Jr., who died on November 10, 1974, at the age of 46. The claim alleged that Wilson Day had worked until his death, had complained about his lungs, was short of breath, and wheezed. The claim indicates that the cause of death was cardiac arrest.
 
 
 3
 A hearing was held before an administrative law judge on July 22, 1980, at which the following evidence was received. A death verification from the Letcher County Health Department listed the causes of death as cardiac arrest, ASHD Hypertension, and coronary isthemia. An autopsy report listed "lesions contributing directly to death" as "infarction, myocardial, healing and healed, anteroseptal," and "acute left ventricular failure with severe pulmonary edema." Related lesions were listed as arteriosclerosis, marked congestion and edema of lungs, and congestion of viscera. The report listed bilateral pneumoconiosis or anthracosis as a "significant lesion not directly contributing to death." Further, "[t]he section of the lungs show pulmonary edema, emphysema, fibrosis and deposit of anthrocotic pigment with focal nodular fibrosis and calcification which also involved the hilarlymph nodes."
 
 
 4
 A letter from Day's physician, Mary Woodring, M.D., of June 2, 1976, indicates that Day had no cough in 1964, but had been treated in 1972 for a cough by another physician. Further,
 
 
 5
 [Day] was seen in March 1973 with a chronic cough and at that time he was advised to stop smoking. He was seen again in November 1973 with a deep cough and wheezing at night. Examination revealed scattered rhonchi. In 1974, February he was again examined and at that time he had rales in his chest. I have no record of either pulmonary function tests nor of blood tests done on Mr. Day. Apparently he was able to carry out his day to day living without serious disability.
 
 
 6
 William H. Anderson, M.D., reviewed Day's records and concluded:
 
 
 7
 The cardiovascular and respiratory system as described in the autopsy protocal are typically those of an individual with a combination of hypertensive and arteriosclerotic heart disease with at least one previous myocardial infarction and death being due to an acute myocardial infarction. From the description given by the prosector, the pneumoconiosis would certainly not be of the progressive massive fibrosis variety and in no way could have contributed to the heart disease nor the death of Mr. Day, which apparently occurred on November 10, 1974.
 
 
 8
 The parties do not contest that Day worked in the coai mines for 22 years.
 
 
 9
 Frances Day testified that when Wilson Day returned from work at the Sparks Coal Company he would be dirty and black. Wilson Day later worKed for ten years underground for the Peam Coal Company where he hand-loaded coal. When Wilson Day returned from work he would be black and dusty. Day next worked for Southeast Coal Company where he worked at the tipple where the coal is processed, and, again returned home each evening black and dusty. Day worked from 1962 to 1974 for the respondent Beth-Elkhorn Corp. in various capacities.
 
 
 10
 Frances Day testified that her husband coughed frequently and would sleep in a chair by an open window. Wilson Day often was unable to sleep due to the cough, and Frances would place a wet wash cloth under his nose. Wilson Day often could not eat breakfast or drink coffee due to the cough. Wilson Day spit up dark yellow phlegm. Day had smoked cigarettes although Frances Day testified that he had stopped. Day's shortness of breath was so severe that at times he could not muster enough energy to "fix up the lawn." Frances Day and her brother-in-law did things around the house that Wilson was unable to do. Frances Day further testified that "I went to the doctor with him and Dr. Woodring told him at the hospital ... you have black lung and why don't you quit work."
 
 
 11
 Ismay and Bill Sparks testified that Wilson Day was exposed to coal dust in his work at Sparks Brothers Coal Company and peam Coal Company.
 
 
 12
 Paul Hogg, Wilson Day's son-in-law, testified that he saw Day at work at Beth-Elkhorn every day and that, before his death, Day had little strength or stamina and was short of breath, When working around the house, Day would have to stop frequently to catch his breath. Day also suffered from a diminished capacity to climb stairs or hills.
 
 
 13
 Sandy Hogg, Day's daughter, testified that her father complained of tightness in his chest and needed to take breaks when mowing the lawn. Day frequently coughed and spit up.
 
 
 14
 On September 15, 1980, the ALJ denied benefits. The ALJ noted that "there was no evidence presented to the effect that the miner was unable to perform his usual coal mine work up until November 7, 1974." The ALJ found that Day had simple pneumoconiosis and was entitled to a presumption pursuant to 20 C.F.R. 5727.203(a). The ALJ found that the presumption was rebutted pursuant to 20 C.F.R. S727.203(b)(2), (3), because the autopsy report and Dr. Anderson's report established that the pneumoconiosis did not contribute to Day's death, and that Day's continued work in the coal mine in conjunction with Dr. Woodring's observation that Day could continue his daily activities supported the conclusion that Day could do his usual coal mine work at the time of his death.
 
 
 15
 On October 13, 1980, Frances Day moved the ALJ to reconsider on the ground that Dr. Woodring's statement was ambiguous and had been misinterpreted by the ALJ. Day sought a hearing for Woodring to testify. Day submitted a letter from Woodring indicating Wilson Day had had pneumoconiosis and that Woodring had recommended that he stop work. Day also proffered additional medical evidence not argued in this petition. On October 23, the motion was denied on the ground that "no valid reason has been given for the claimant's failure to submit such evidence at the original hearing."
 
 
 16
 Day appealed the ALJ's decision to the Benefits Review Board, and, on May 31, 1985, the Board affirmed. The Board found that the ALJ did not abuse his discretion by refusing to consider the evidence proffered by Day after the decision had been rendered. The Board further found that the ALJ did not err in relying on Dr. Anderson and Woodrings' opinions to rebut the presumption. Day petitions for review of the Board's order.
 
 II.
 
 17
 Day's principal contentions challenge the ALJ's determination that the presumption of disability had been rebutted pursuant to 20 C.F.R. 5727.203(b)(2), (3) which provides:
 
 
 18
 In adjudicating a claim under this subpart, all relevant medical evidence shall be considered The presumption in paragraph (a) of this section[1] shall be rebutted if:
 
 
 19
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see 5410.412(a)(1) of this title); or
 
 
 20
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment.
 
 
 21
 This court's review of the Board is limited to scrutiny for errors of law and for adherence to the statutory standard of review. Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 254 (6th Cir. J983), "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. 5921(b)(3); Haywood v. Secretary of Health and Human Services, 699 F.2d 277, 285 (6th Cir. 1980). If the ALJ's decision is supported by substantial evidence, this court must affirm even if it would take a different view as the trier of fact. Moore v. Califano, 633 F.2d 727, 729 (6th Cir. 1983); Elkins v. Secretary of Health and Human Services, 658 F.2d 437, 439 (6th Cir. 1981).
 
 
 22
 While "the claimant has the burden of proving by a preponderance of the evidence all the facts necessary to establish the presumption... " ' Consolidation Coal Co. v. Sanati, 713 F.2d 480, 481-82 (4th Cir. 1983), "[o]nce the claimant has satisfied the requirements of the interim presumption, he has established a prima facie case of total disability," Taft v. Alabama-Products Corp., 733 F.2d 1518, 1521 (11th Cir. 1984); Prokes v. Mathews, 559 F.2d 1057, 1060 (6th Cir. 1977). The burden of rebutting is on the operator, United States Steel Corp. v. Gray, 588 F.2d 1022, 1028 (5th Cir. 1979), and this is a burden of persuasion, not merely production, Alabama By-Products v. Sworth, 733 F.2d 1511, 1514 (1lth Cir. 1984); Gibas v. naw Mining Company, 748 F.2d 1112, 1120 (6th Cir. 1984), cert. denied, 105 S. Ct. 2357 (1985); Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 492 (6th Cir. 1985). But see Bizzarri v. Consolidation Coal Co., 775 F.2d 751, 753 (6th Cir. 1985).
 
 
 23
 When the operator seeks to rebut by showing that a miner can do his usual coal mine work pursuant to subsection 203(b)(2), medical evidence alone can rebut the presumption, Ramey, 755 F,2d at 489-90. Further, the regulations specifically set out the evidentiary effect of a miner's employment in the coal mines at the time of death. 20 C.F.R. 5727.205(a) provides in pertinent part,.
 
 
 24
 A deceased miner's employment in a mine at the time of death shall not be used as conclusive evidence that the miner was not totally disabled. In the case of a deceased miner who was employed in a coal mine at the time of death, all relevant evidence, including the circumstances of such employment and the statements of the miner's spouse, shall be considered in determining whether the miner was totally disabled due to pneumoconiosis at the time of death.
 
 
 25
 "[E]vidence of continued mine employment up to the time of death is legally insufficient to rebut the interim presumption." Consolidation Coal Co. v. Smith, 699 F.2d 446, 449 (8th Cir. 1983). Pursuant to our limited scope of review, Day's continued employment in the coal mine and Woodring's statement that Day continued to pursue his day to day activities provide substantial evidence that, at the time of his death, Day could perform his usual coal mine work.
 
 
 26
 Pursuant to subsection 203(b)(3), "the employer must establish that pneumoconiosis was not a 'contributing cause' to the coal miner's disability." Moseley v. Peabody Coal Co., 769 F.2d 357, 361 (6th Cir. 1985). In this case, Dr. Anderson indicated that the pneumoconiosis found in the autopsy could not have contributed to Day's heart disease or death, and the autopsy itself listed pneumoconiosis as a lesion "not directly contributing to death." Accordingly, substantial evidence supports the conclusion that the presumption was rebutted pursuant to subsection 203(b)(3). Accordingly, the petition for review is DENIED.[2]
 
 
 
 [1]
 The parties do not contest an review whether Day was entitled to the presumption
 
 
 [2]
 Day also contends that the ALJ erred in denying her motion for reconsideration based on a new letter from Dr. Woodring. 20 C.F.R. S725.479(b) provides:
 Any party may, within 30 days after the filing of a decision and order under 5725.478, request a reconsideration of such decision and order by. the administrative law judge. The procedures to be followed in the reconsideration of a decision and order shall be determined by the administrative law judge.
 For the reasons stated in the decision of the Board, we agree that the ALJ did not err in denying the motion.
 Day also contends that the ALJ failed to set forth a sufficient rationale for his findings. The ALJ cited the specific evidence in the record that supported his findings. Therefore, our review is limited to whether substantial evidence supports those findings. No insufficiency in the decision of the Board or ALJ inhibits our review.