NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0518n.06
Filed: July 20, 2007

Case No. 05-4637

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MANNING COAL CORPORATION; KENTUCKY CENTRAL INSURANCE COMPANY, | ) ) ) ) | |
| Petitioners-Appellants, | ) ) | ON APPEAL FROM THE BENEFITS REVIEW BOARD |
| v. | ) ) ) | |
| CORBIN L. WRIGHT; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES, | ) ) ) ) ) ) | |
| Respondents-Appellees. | ) ) ) ) | |

BEFORE: RYAN, BATCHELDER and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Petitioner Manning Coal Corporation ("Manning Coal") appeals the decision of the Benefits Review Board ("Board") affirming the decision and order of Administrative Law Judge Thomas Phalen, Jr. ("ALJ"). The ALJ awarded benefits to respondent, Corbin Wright ("Wright"), pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1977, 30 U.S.C. § 901, *et seq.* ("Act"). Manning Coal challenges the Board's determination that substantial evidence supports the ALJ's conclusions that (1) Dr. Williams's medical opinion was sufficiently reasoned to support an award of benefits under the Act and (2) Wright was totally disabled due to

pneumoconiosis. In light of the remedial nature of the Act, we find that substantial evidence supports the ALJ's decision to award benefits to Wright.

## I. BACKGROUND

Wright is a 77 year-old former mine worker who worked in the mines for 19 years during the period from 1950 until 1986. Most of Wright's mining work involved welding and repairs, although he worked three to four years underground. In January 1986, Wright quit mining after his lungs began to hurt and he "got sick." He filed his original claim for benefits under the Act on March 24, 1986, and a second claim on March 22, 1989.

This case has an extensive administrative history, and it is not necessary to a determination of the issues before us on appeal to recount it in detail. Suffice it to say that Wright's attempts to obtain benefits have included numerous hearings before two different ALJs and numerous appeals to and remands from the Board, and the last opinion from the ALJ was on remand from the Board with instructions to reconsider "whether Dr. Williams'[s] opinion that [Wright] suffers from a moderately severe pulmonary impairment is sufficiently reasoned to establish that [Wright] is totally disabled due to pneumoconiosis." The Board concluded that if, on remand, the ALJ found Dr. Williams's opinion sufficiently reasoned, the ALJ could find that Dr. Williams's diagnosis of a moderately severe pulmonary impairment was sufficient to support a finding of total disability under 20 C.F.R. § 718.204(b)(2)(iv).

The ALJ found that Dr. Williams's opinion was reasoned, and therefore, sufficient to establish total disability due to pneumoconiosis. As he had several times before, the ALJ awarded benefits. Manning Coal again appealed to the Board, arguing that Dr. Williams's opinion was insufficient as a matter of law to support a finding of total disability, and that the ALJ erred "in

2

finding the evidence, specifically Dr. Williams's opinion, sufficient to establish total disability due to pneumoconiosis pursuant to 20 C.F.R. § 718.204(b), (c)."

The Board applied the law of the case doctrine and found that it had already rejected Manning's argument regarding total disability, because "given the exertional requirements of claimant's usual coal mine employment, the [ALJ] reasonably determined that Dr. Williams's diagnosis [of a moderately severe pulmonary impairment] was sufficient to support a finding of total disability." Further, the Board found that the ALJ did not err in his determination that Dr. Williams's diagnosis of a moderately severe pulmonary impairment was sufficiently reasoned to support an award of benefits. The Board affirmed the award of benefits.

In their last go-round, the entirety of the parties' arguments before the ALJ and the Board turned on the questions of total disability, disability causation, and the nature of Dr. Williams's opinion. Our inquiry here then is two-fold: (1) does substantial evidence support a conclusion that Dr. Williams's medical opinion is sufficiently reasoned to support an award of benefits? and (2) does substantial evidence support the ALJ's inferences that Wright suffers a totally disabling respiratory impairment due to pneumoconiosis?

## II. STANDARD OF REVIEW

While we must affirm the Board's decision "if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations," our review on appeal is "focused on whether the ALJ — not the Board — had substantial evidence upon which to base his . . . decision." *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997). That is, "[w]e review the ALJ's decision to determine whether it is supported by substantial evidence and is consistent with applicable law." *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir.

3

1995). "[A]s long as the ALJ's conclusion is supported by the evidence, we will not reverse, even if the facts permit an alternative conclusion." *Id.*

Substantial evidence, from the record considered as a whole, "'is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 488 (6th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "In referring to a singular 'reasonable mind,' the Supreme Court has directed us to uphold decisions that rest within the realm of rationality; a reviewing court has no license to 'set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 756 (4th Cir. 1999) (quoting *Smith v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 843 F.2d 1053, 1057 (7th Cir. 1988) and discussing *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Bizzarri v. Consolidation Coal Co.*, 775 F.2d 751, 753 (6th Cir. 1985) ("[I]t is 'immaterial that the facts permit the drawing of diverse inferences.'" (quoting *Parker v. Dir.*, *Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 590 F.2d 748, 749 (8th Cir. 1979)).

Indeed, "[a] remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *McCain v. Dir.*, *Office of Workers' Comp. Programs*, 58 F. App'x 184, 201 (6th Cir. 2003) (citing *Cornett v. Benham Coal, Inc.,* 227 F.3d 569, 575 (6th Cir. 2000) and *Dir., Office of Workers' Comp. Programs v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983)). "Where, however, an ALJ has improperly characterized the evidence or failed to [take] account of relevant record material, deference is inappropriate and remand is required." *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 (6th Cir. 2003).

4

Additionally, we must bear in mind that "[t]his court has often repeated that the Act is remedial legislation that should be liberally construed so as to include the largest number of miners within its entitlement provisions." *Adams v. Dir., Office of Workers' Comp. Programs*, 886 F.2d 818, 825 (6th Cir. 1989).

## III. ANALYSIS

Because Wright filed his claim for benefits after March 31, 1980, Part 718 of Title 20 of the Code of Federal Regulations governs his claim. *See Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 574 (6th Cir. 2000). To obtain federal black lung benefits, Wright must establish, by a preponderance of the evidence, that (1) he suffers from pneumoconiosis[1], (2) the pneumoconiosis arose out of his coal mine employment, (3) he has a totally disabling respiratory or pulmonary condition, and (4) that his total disability is due at least in part to pneumoconiosis. *See Mountain Clay, Inc. v. Spivey*, 172 F. App'x 641, 646-47 (6th Cir. 2006). Manning Coal does not appeal the ALJ's determination that (1) Wright suffers from pneumoconiosis (2) that arose from his coal mine employment; rather, Manning Coal's appeal focuses on the latter two prongs.

**A.     Dr. Williams's Opinion is Sufficiently Reasoned to Support an Award of Benefits**.

Dr. Williams examined Wright on two occasions, first on April 25, 1986, and then on April 19, 1989. The 1986 examination included x-ray results showing the presence of pneumoconiosis category 1/0; arterial blood gas ("ABG") studies showing a resting oxygen tension level of 80.6; a pulmonary function test ("PFT") showing an FVC of 4.17 (104%), with an FEV1 of 2.64 (91%) and

---

[1]"The term 'pneumoconiosis' means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). "[A] disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

a MVV of 99 (85%). Taking account of Wright's coal mine employment history and his physical ailments, Dr. Williams diagnosed Wright as suffering from "(1) [Chronic Obstructive Pulmonary Disease ("COPD")] with irregular and nodular fibrosis apparently related to pneumoconiosis, 1/0 QQ four lower zones; (2) Pulmonary emphysema; . . . ." Dr. Williams opined that Wright suffered a mild pulmonary impairment and that he had "the respiratory physiological capacity to perform the work of a coal miner or to perform comparable work in a dust-free environment[.]" Although Dr. Williams checked the box indicating a mild pulmonary impairment, he did not elaborate or answer the next question on the examination form: "If the miner has a pulmonary impairment, is such impairment related to pneumoconiosis or does it have another etiology?"

Dr. Williams's examination of Wright in 1989 included: x-ray results revealing the presence of category 1/0 pneumoconiosis (the same as in 1986); ABG tests showing a resting oxygen tension level of 79.2 (one point lower than the 1986 level); PFTs resulting in a FVC of 4.01 (103%) (one percentage point lower than in 1986), a FEV1 of 2.56 (91%) (the same as in 1986), and a MVV of 80 (70%) (15% lower than in 1986). Dr. Williams's 1989 cardiopulmonary diagnosis of Wright's condition stated: "(1) COPD with 1.0 Q P pneumoconiosis and pulmonary emphysema; (2) Coronary artery disease with angina (by history) . . . ." Regarding the etiology of the cardiopulmonary diagnosis, the 1989 medical report stated: "(1) smoking[2]; (2) genetic; (3) allergens with intrinsic bronchitis and asthma; (4) exposure to coal dust. Etiology of his cardiovascular disease is (1) genetic; (2) smoking." Answering "[t]he degree of severity of the [pulmonary] impairment, particularly in terms of the extent to which the impairment prevents the patient from

---

[2]Wright has smoked one pack of cigarettes a day for the last 40 years. He was still smoking at the time Dr. Williams evaluated him in 1989.

6

performing his current or last coal mine job of one year's duration," Dr. Williams's medical report stated: "He has moderately severe impairment of the pulmonary system primarily due to his emphysema. He has heart disease and angina. I would classify this as functional class 2, therapeutic classification C. His heart disease would prevent him from doing strenuous work."

Manning Coal asserts that Dr. Williams's opinion that Wright suffers from a moderately severe pulmonary impairment is not well reasoned and should not have been considered by the ALJ. Manning Coal argues that Dr. Williams's medical opinion is insufficiently reasoned because (1) despite non-qualifying PFTs and ABG studies, Dr. Williams diagnosed a moderately severe pulmonary impairment and (2) although the results of the 1986 PFTs and ABG study were virtually the same as the 1989 results, Dr. Williams diagnosed Wright with "mild pulmonary impairment" in 1986 and a "moderately severe pulmonary impairment" in 1989.

Manning Coal's argument here "is doomed to fail, for in black lung adjudications, the decision of whether a medical opinion is reasoned is a decision that rests ultimately with the ALJ, not with us." *Consolidation Coal Co. v. Dir., Office of Workers' Comp. Programs*, 294 F.3d 885, 895 (7th Cir. 2002). "Determinations of whether a physician's report is sufficiently documented and reasoned is a credibility matter left to the trier of fact." *Moseley v. Peabody Coal Co.*, 769 F.2d 357, 360 (6th Cir. 1985).

Section 718.204(b)(1) provides that

[A] miner shall be considered totally disabled if the miner has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner:

(i) From performing his or her usual coal mine work; and

(ii) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in

7

a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

A claimant may establish total disability in one of four ways, including

Where total disability cannot be shown under paragraphs (b)(2)(i), (ii), or (iii) of this section, or where pulmonary function tests and/or blood gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b)(1) of this section.

20 C.F.R. § 718.204(b)(2)(iv). When determining whether an opinion is documented and reasoned, our case law requires the ALJ "to examine the validity of the reasoning of a medical opinion *in light of the studies conducted* and the *objective indications* upon which the medical opinion or conclusion is based." *Dir., Office of Workers' Comp. Programs v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983) (emphasis added).

The ALJ found that Dr. Williams "did interpret [Wright's] non-qualifying test results as demonstrating pulmonary impairment." The ALJ concluded that though a number of similarities existed between the 1986 and 1989 opinions, some differences existed also, including, (1) "the ABG and PFT values in 1989 are lower than those recorded in 1986" and (2) "subsequent to the 1986 examination, [Wright] underwent a heart catheterization that revealed artery blockage." "Although [Dr. Williams] relied on pulmonary tests exhibiting levels of impairment below that required to establish total disability under section 718.240(b)(2)(i), these tests did demonstrate some impairment and can form a basis, along with other evidence, for a reasoned medical decision establishing total disability under section 718.240(b)(2)(iv)." *Jonida Trucking*, 124 F.3d at 744; *see also Cornett*, 227 F.3d at 577 ("the regulations explicitly provide, a doctor can make a reasoned medical judgment that

8

a miner is totally disabled even 'where pulmonary function tests and/or blood-gas studies are medically contraindicated.'" (quoting 20 C.F.R. § 718.204(b)(2)(iv)).

Dr. Williams's 1989 medical report reflected Wright's medical history, an accurate description of his coal mine employment, a physical exam, a chest x-ray, PFTs, and an ABG study. While Dr. Williams did not explicitly state that he based his diagnosis of moderately severe pulmonary impairment on the non-qualifying tests or his examination of Wright, the ALJ found that the medical evidence contained in the record supported Dr. Williams's diagnosis. For instance, as in *Jonida*, Wright's non-qualifying PFT and ABG results did indicate some impairment. Furthermore, Wright's tests indicated some worsening — albeit slight — of his pulmonary condition.

Moreover, "even a 'mild' respiratory impairment may preclude the performance of the miner's usual duties, depending on the exertional requirements of the miner's usual coal mine employment." *Cornett*, 227 F.3d at 578. The ALJ, in a previous decision, concluded that Wright's usual coal mine work consisted of repairing equipment by welding, and specifically, that Wright "sat for one hour per day, stood for six hours per day, lifted 100 to 150 pounds three to four times per day, and carried 100 to 150 pounds 100 to 500 feet per day." The ALJ characterized Wright's work as "heavy work," and this characterization has not been disputed.

Dr. Williams certainly could have prepared a more thorough report that more clearly stated the interplay between his diagnosis of Wright's pulmonary impairment and Wright's ability to work in mining. *See Poole v. Freeman United Coal Mining Co.*, 897 F.2d 888, 894 (7th Cir. 1990) ("We note our concern, however, about Dr. Rao's practice of completing the DOL reports without providing an explanation where the form requests one. Such reports are minimally sufficient to support a claim for benefits and hamper review by this court."). The standard, however, requires a

sufficiently reasoned medical opinion — not perfection. We find that substantial evidence supports the ALJ's determination that Dr. Williams's 1989 medical opinion was sufficiently reasoned to support an award of benefits.

**B.**     **Substantial Evidence Supports a Finding that Wright Suffers a Totally Disabling Respiratory Impairment.**

In a related vein, Manning Coal asserts that the ALJ erred as a matter of law by attributing any meaning other than a plain meaning to the words "his heart disease would prevent him from doing strenuous work." Section 8a of Dr. Williams's 1989 medical report, entitled "Impairment," contains this inquiry:

> If the patient has chronic respiratory or pulmonary disease, give your medical assessment — With Rationale — of:
>
> a. The degree of severity of the impairment, particularly in terms of the extent to which the impairment prevents the patient from performing his/her current or last coal mine job of one year's duration.

Dr. Williams responded:

> *He has moderately severe impairment of the pulmonary system primarily due to his emphysema. He has heart disease and angina. I would classify this as functional class 2, therapeutic classification C. His heart disease would prevent him from doing strenuous work.*

(Emphasis added.) Dr. Williams failed to fill out subpart b of this section which asked for a description of "[t]he extent to which each of the diagnoses listed in D.6 [cardiopulmonary diagnoses] above contributes to the impairment."

Critically, Section 9, the very next section, asks for "Non-Cardiopulmonary Diagnosis — If the patient has any disabling **non-respiratory condition(s)** indicate what the condition is and describe its degree of impairment, especially as it may affect the patient's ability to perform his coal

10

mine work." (Emphasis in original). Here, Dr. Williams wrote "None." The ALJ reasoned,

> While it could be interpreted that Dr. [Williams] unequivocally concluded that [Wright] was disabled based solely on his heart condition, I find this not to be the case. Considering the fact that Dr. Williams was responding to a question concerning impairment due to pulmonary disease, and responded that [Wright's] condition is "moderately severe," it stands to reason that the total disability from performing strenuous work is not only based on the heart condition, but also on [Wright's] pulmonary impairment. Therefore, I find that when Dr. Williams'[s] statement is read *in pari materia*, with the prior sentences, it is clear that the entire statement constitutes his response to the form instructions, and thus clearly infers that he found [Wright] to be totally disabled from a pulmonary standpoint.

The ALJ candidly acknowledged that Dr. Williams's opinion could be read as finding that Wright was totally disabled based on his heart condition. But the ALJ drew an inference based on the questions and answers in their entirety. While we might not have drawn the same inference under a *de novo* standard of review, we find that, here, the ALJ drew a permissible inference in light of the entire record before him and the remedial nature of the Act. *See Grundy Mining Co. v. Flynn*, 353 F.3d 467, 484 (6th Cir. 2003) ("The Board determined, and we agree, that the ALJ drew a reasonable inference that lies within his 'broad discretion in evaluating the medical evidence.'" (Citation omitted)). The ALJ's inference here was within the "realm of rationality," and we have "no license to 'set aside an inference merely because [we find] the opposite conclusion more reasonable or because [we question] the factual basis.'" *Piney Mountain Coal Co.*, 176 F.3d at 756 (citation and internal quotation marks omitted).

Manning Coal argues that the phrase "moderately severe pulmonary impairment" is an undefined, non-medical term that is insufficient as a matter of law to allow an ALJ to compare Wright's specific exertional requirements to his pulmonary condition and reach a finding of total disability, primarily because Dr. Williams's opinion did not discuss any limitations or restrictions

11

that Wright's impairment may have had on his ability to perform his job at the coal mine. But as we have already pointed out, the ALJ may draw reasonable inferences from the evidence before him. *See Grundy Mining Co.*, 353 F.3d at 484. "To infer disability, the ALJ must first determine the nature of the claimant's usual coal mine work and then compare evidence of the exertional requirements of the work with medical opinions as to the claimant's work capability." *Poole*, 897 F.2d at 894. Moreover, "in determining whether total disability has been established, an ALJ must consider all relevant evidence on the issue of disability including medical opinions which are phrased in terms of total disability or provide a medical assessment of physical abilities or exertional limitations which lead to that conclusion." *Midland Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 358 F.3d 486, 493 (7th Cir. 2004) (citation omitted).

As we discussed previously, Dr. Williams's medical opinion is not a model opinion, but we are persuaded that the ALJ could have inferred from it that Wright is totally disabled in light of his "moderately severe pulmonary impairment" and his job, which the ALJ characterized as requiring "heavy work." A reasonable mind could conclude that a moderately severe pulmonary impairment (consisting of both COPD and emphysema) would prevent Wright from performing his usual coal mine work, which consisted of lifting 100-150 pound loads several times a day and carrying the loads up to 500 feet, or substantially similar work. *See* §718.204(b)(1)(i)-(ii).

**C.** **Substantial Evidence Supports the ALJ's Determination that Wright's Total Disability is "Due To" Pneumoconiosis.**

Section 718.204(c)(1)(i)-(ii) provides that

> A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis, as defined in § 718.201, is a *substantially contributing cause* of the miner's totally disabling respiratory or pulmonary impairment. Pneumoconiosis is a "substantially

12

contributing cause" of the miner's disability if it:

> (i) Has a *material adverse effect* on the miner's respiratory or pulmonary condition; or

> (ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

20 C.F.R. § 718.204(c)(1)(i)-(ii) (emphasis added).

"To satisfy the 'due to' requirement of the [Act] and its implementing regulations, a claimant must demonstrate by a preponderance of the evidence that pneumoconiosis is 'more than merely a speculative cause of his disability,' but instead 'is a contributing cause of some discernible consequence to his totally disabling respiratory impairment.'" *Grundy Mining Co.*, 353 F.3d at 483 (quoting *Peabody Coal Co. v. Smith*, 127 F.3d 504, 507 (6th Cir. 1997)). "To the extent that the claimant relies on a physician's opinion to make this showing, such statements cannot be vague or conclusory, but instead must reflect reasoned medical judgment." *Id.* "[Wright] may . . . possess a compensable injury if his pneumoconiosis 'materially worsens' [his] condition." *Tennessee Consol. Coal Co. v. Kirk*, 264 F.3d 602, 611 (6th Cir. 2001)

The ALJ adopted his reasoning from a prior order in this case on the issue of "due to" causation:

> Dr. Williams'[s] opinion establishes that [Wright's] pneumoconiosis had a material adverse effect [on Wright's] condition because it was a cause in part of [Wright's] COPD. Dr. Williams also diagnosed emphysema partially caused by coal dust exposure, which falls under the legal definition of pneumoconiosis. Emphysema was the primary source of [Wright's] moderately severe pulmonary impairment. Thus, there is further evidence that [Wright's] pneumoconiosis caused [Wright's] total disability.

The ALJ concluded that pneumoconiosis was more than just a *de minimis* contributor to Wright's

total respiratory disability. His pulmonary impairment was primarily due to emphysema with the remainder of the impairment caused by COPD with pneumoconiosis. Coal dust contributed to his overall pulmonary impairment. While slightly attenuated, the inferences drawn by the ALJ are once again within the "realm of rationality," *Piney Mountain Coal*, 176 F.3d at 756 (citation omitted) and, therefore, "it is 'immaterial that the facts permit the drawing of diverse inferences,'" *Bizzarri*, 775 F.2d at 753 (citation omitted).

## IV. CONCLUSION

Dr. Williams twice physically examined Wright, made note of his medical and employment histories, ran blood gas and pulmonary function tests, and reviewed chest x-rays. Objective evidence supports the ALJ's conclusion that Wright's pulmonary condition worsened from the 1986 to the 1989 examinations. No evidence refuted the ALJ's finding that Wright performed heavy work while employed at Manning Coal. The ALJ acknowledged that Wright's heart condition also affected his health and ability to work. The ALJ, in reviewing the evidence before him and examining it as a whole, determined that Wright's "moderately severe pulmonary impairment" rendered him totally disabled, and that his total disability was due to pneumoconiosis.

Manning Coal provides no evidence to counter Dr. Williams's report. Rather, it simply disagrees with the inferences drawn by the ALJ. We do not shift the burden of proof to Manning Coal — the burden is on Wright to establish entitlement to benefits by a preponderance of the evidence. Manning Coal is not helped, however, by the fact that it produced no evidence or opinions to counter those of Dr. Williams.

We recognize that the record may permit an alternative conclusion from that of the ALJ, but "it would lie beyond 'our limited scope of review' to assign a different weight or meaning to [Dr.

14

Williams's] medical opinion." *Grundy Mining Co.*, 353 F.3d at 484 (quoting *Peabody Coal Co. v. Groves*, 277 F.3d 829, 836 (6th Cir. 2002)).

In light of our limited scope of review and Congress's indication that courts should liberally construe claims to bring as many miners as possible within the Act, we find that substantial evidence supports the ALJ's award of benefits. Accordingly, we **DENY** the Petition for Review.