RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0302P (6th Cir.)
File Name: 00a0302p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DENNIS CORNETT,

              *Petitioner,*

   *v.*

BENHAM COAL, INC.;
KENTUCKY PRODUCERS'
SELF-INSURANCE FUND; and
DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

              *Respondents.*

No. 99-3469

On Petition for Review of a Decision and Order
of the Benefits Review Board,
United States Department of Labor.
No. 98-0480 BLA.

Submitted: May 5, 2000

Decided and Filed: September 7, 2000

Before:  MERRITT, CLAY, and CUDAHY,[*] Circuit
Judges.

_____

**COUNSEL**

**ON BRIEF:** H. Kent Hendrickson, RICE &
HENDRICKSON, Harlan, Kentucky, Christian P. Barber,
Edward Waldman, U.S. DEPARTMENT OF LABOR,
Washington, D.C., for Respondents.  Dennis Cornett, Gilley,
Kentucky, pro se.

_____

**OPINION**

_____

CUDAHY, Circuit Judge.  Dennis Cornett began working
as a Kentucky coal miner in 1968.  For the next 23-and-a-half
years his work required that he crawl for eight hours, lift 35
to 40 pounds hundreds of times and carry 50 pounds a
distance of 200 feet more than 100 times each day in the
mines.  During this period, Cornett also smoked about half-a-
pack of cigarettes per day.  Cornett developed pulmonary
problems—coughing, wheezing, mucous production,
shortness of breath, chest pains, etc.—and in early 1992 he
sought workers' compensation.  On March 2, 1992, Cornett
was examined by two doctors in connection with his
Kentucky state workers' compensation claim.  Dr. Glen Baker
examined Cornett twice—once on March 2 and again on
December 21, 1992.  During the March examination, Dr.
Baker administered a pulmonary function study and evaluated
an x-ray of Cornett's chest.  Both times, Dr. Baker diagnosed
coal workers' pneumoconiosis, chronic obstructive airway
disease and chronic bronchitis.  *See* J.A. at 69, 95.  The
second doctor, Dr. Abdi Vaezy, also examined Cornett on

_____

[*] The Honorable Richard D. Cudahy, Circuit Judge of the United
States Court of Appeals for the Seventh Circuit, sitting by designation.

Fino demonstrated knowledge of the physical requirements of
Cornett's work when pronouncing him not totally disabled.

As with his pneumoconiosis determination, the ALJ's
consideration of the medical evidence of Cornett's total
disability was flawed.  He rejected Dr. Vaezy's opinion for an
inappropriate reason, and, although the ALJ had more cause
to question Dr. Baker, the ALJ did not completely analyze
that doctor's opinion before casting it off.  Thus, because the
ALJ failed to consider the evidence completely, a remand is
appropriate for further fact finding.

We, of course, do not express an opinion whether Cornett
has coal workers' pneumoconiosis or is totally disabled.
These are not determinations for us to make, but because of
the errors committed by the ALJ in considering and weighing
the evidence before him, a remand is appropriate for a more
complete consideration of the record.  For the foregoing
reasons, we grant Cornett's petition for review and VACATE
the decision of the Benefits Review Board.  This matter is
REMANDED to the administrative law judge for proceedings
not inconsistent with this opinion.

reasoned medical judgment that a miner is totally disabled even "where pulmonary function tests and/or blood-gas studies are medically contraindicated." 20 C.F.R. § 718.204(c)(4). Under the regulations, Dr. Vaezy was entitled to base a reasonable opinion on nonqualifying test results, *see Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 744 (6th Cir. 1997), and the ALJ erred by rejecting his opinion for this reason.

The ALJ rejected Dr. Baker's opinion because Dr. Baker failed to explain why his "March 2, 1992 and December 21, 1992 opinions [were] contradictory on the issue of total disability." J.A. at 22. This perceived inconsistency stems from the fact that Dr. Baker's March evaluation clearly found total disability, *see id*. at 69, but his December evaluation described the degree of impairment as "mild," *id*. at 95. Then in his 1997 report, Dr. Baker stated that Cornett was "totally disabled to perform his usual coal mine employment." *Id*. at 130. Although Baker's unexplained discrepancy may seem superficially troubling, the ALJ failed to consider that even a "mild" respiratory impairment may preclude the performance of the miner's usual duties, depending on the exertional requirements of the miner's usual coal mine employment. *See Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211, 218-19 (6th Cir. 1996) (comparing physician's assessment with exertional requirements of usual coal mine employment). In his 1997 report, Dr. Baker specifically noted that Cornett would have to lift 50 pounds more than 100 times per day in his usual employment, thus looking to the exertional requirements when determining that Cornett was totally disabled. Dr. Vaezy also noted the exertional requirements of Cornett's usual duties when concluding that he was totally disabled. By contrast, neither Dr. Broudy nor Dr. Dahhan mention the physical requirements specific to Cornett's previous employment—they both noted, simply, that he worked "underground." J.A. at 104, 138. The ALJ credited their opinions that Cornett was not totally disabled, but the ALJ improperly did not consider whether they had any knowledge of the exertional requirements of his work. *See Lane v. Union Carbide Corp.*, 105 F.3d 166, 172 (4th Cir. 1997). Only Dr.

March 2, 1992, and he, in addition, reviewed the pulmonary function study and an x-ray of Cornett's chest. Dr. Vaezy diagnosed coal workers' pneumoconiosis and chronic obstructive pulmonary disease. *See id*. at 38. Both doctors believed that Cornett's pneumoconiosis and obstructive airway disease prevented him from performing the tasks of his usual coal mine employment, *see id*. at 38, 69, although in his December 1992 report, Dr. Baker referred to Cornett's impairment as "mild," *id*. at 95. Dr. Baker also reported that Cornett should have no further coal dust exposure. *See id*. at 69. Dr. Vaezy and Dr. Baker both concluded that long-term exposure to coal dust significantly contributed to Cornett's respiratory impairment. *See id*. at 38, 69.

In October of 1992, Cornett filed an application for benefits under the Black Lung Benefits Act (BLBA), 30 U.S.C. § 901 *et seq*., with the Department of Labor. On April 9, 1993, a district director within the Department of Labor denied Cornett's application, and the Director, Office of Workers' Compensation Programs (the Director), referred Cornett's claim to the United States Department of Labor, Office of Administrative Law Judges for a formal hearing. An administrative law judge (ALJ) was assigned to adjudicate Cornett's claim and considered reports by Drs. Vaezy and Baker as well as medical reports from three additional doctors—Dr. Broudy, Dr. Dahhan and Dr. Fino.

Drs. Vaezy and Baker concluded in new reports, which were based on their prior examinations of Cornett, that he was suffering from coal miners' pneumoconiosis due to his prolonged exposure to coal dust. Both doctors also stated that Cornett was totally disabled, meaning that he was unable to continue the strenuous work in the mines, as a result of his pneumoconiosis. They noted, however, that it was impossible to determine the extent to which Cornett's smoking history contributed to his respiratory problems. *See J.A*. at 129-32. They were both clear, however, that exposure to coal dust was a "significant factor" in causing Cornett's moderate respiratory impairment. *See id*. at 129, 131. The three other doctors disagreed. Dr. Bruce Broudy examined Cornett on

April 11, 1997 (having previously examined him on June 22, 1992) and diagnosed Cornett with chronic bronchitis and hypertension but believed that Cornett did not have coal workers' pneumoconiosis. *See id*. at 137-38. He further concluded that Cornett's chronic bronchitis stemmed solely from Cornett's many years of cigarette smoking, not from exposure to coal dust. *See id*. at 138. Dr. A. Dahhan had examined Cornett in 1993, and his report stated that there was no evidence of pneumoconiosis or of any pulmonary disabilities that were caused by coal dust exposure. Dr. Dahhan concluded that Cornett suffered from mild chronic bronchitis resulting solely from his smoking history. *See id*. at 105. Dr. Gregory Fino never personally examined Cornett but rather reviewed prior medical records and tests. He issued a "consultative report" in which he stated that Cornett's condition was not consistent with a coal dust related condition but rather was consistent with smoking. *See id*. at 125. Drs. Broudy, Dahhan and Fino all concluded that Cornett was neither partially nor totally disabled and was capable of returning to his last mining job or a job requiring similar efforts. *See id*. at 105, 125, 138.

Evaluating this evidence, the ALJ found that the medical reports of Drs. Baker and Vaezy were of little merit because "[t]hey did not provide support as to why they diagnosed Cornett with pneumoconiosis rather than non-occupational chronic bronchitis." J.A. at 20. Instead, the ALJ found that "[t]hey based their diagnoses of coal workers' pneumoconiosis on their interpretations of an x-ray and a history of coal dust exposure." *Id*. at 19. Because their evaluations were "merely a restatement of a positive x-ray," the ALJ determined the reports were entitled to "little weight." *Id*. at 19-20. On the other hand, the ALJ gave "substantial weight" to the other doctors' reports and found that Cornett failed to prove the existence of coal workers' pneumoconiosis. *See id*. 19-22. In addition, the ALJ found that Cornett failed to prove total disability due to pulmonary problems and on these two grounds denied Cornett's request for benefits on November 28, 1997. *See id*. at 23.

### B. Total Disability

A claimant is considered totally disabled "when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f)(1)(A). The applicable regulations explain that "a miner shall be considered totally disabled if pneumoconiosis as defined in § 718.201 prevents or prevented the miner . . . [f]rom performing his or her usual coal mine work." 20 C.F.R. § 718.204(b)(1). There are four ways a miner can prove total disability under the regulations, *see* 20 C.F.R. 718.204(c), and the ALJ mentioned and rejected Cornett's proof under all four methods. But, as before, Cornett and the Director argue that the ALJ's determination under only one of the four avenues of proof was in error. The relevant section of the regulations states,

> Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) of this section,

20 C.F.R. § 718.204(c)(4). All five doctors agreed that Cornett suffered from a mild to moderate respiratory impairment, but only Drs. Vaezy and Baker determined that Cornett was totally disabled. The ALJ gave Dr. Vaezy's opinion "little weight" because he relied, in part, on a pulmonary function study that "yielded numbers above the qualified amount." J.A. at 23. This is clearly an inappropriate reason to reject a physician's opinion because, as the regulations explicitly provide, a doctor can make a

ailments do not qualify as statutory pneumoconiosis. *See* 20 C.F.R. 718.201. But, of the three, only Dr. Fino attempted to explain his rationale for completely excluding Cornett's exposure to coal dust as an aggravating factor. Dr. Fino attributed Cornett's obstructive lung disease solely to cigarette smoking because, in his opinion, the pulmonary function tests were not consistent with "fibrosis as would be expected in simple coal workers' pneumoconiosis." J.A. at 125. What the ALJ does not consider in his opinion is that, although "fibrosis" is generally associated with "medical" pneumoconiosis, it is not a required element of the broader concept of "legal" pneumoconiosis. *Cf. Hobbs*, 45 F.3d at 821. The legal definition does not require "fibrosis" but instead requires evidence that coal dust exposure aggravated the respiratory condition. *See Southard*, 732 F.2d at 71-72. Unlike Dr. Fino, Drs. Broudy and Dahhan make no attempt to explain on what basis they believe that coal dust exposure did not contribute to Cornett's respiratory problems. By contrast, the opinions of Drs. Vaezy and Baker—which, as noted, were discredited by the ALJ as having an inadequate basis—clearly address the statutory requirements by acknowledging that coal dust, while not conclusively the cause of Cornett's condition, was certainly an aggravating factor, contributing to Cornett's respiratory impairment.

In sum, the ALJ's determination that Drs. Vaezy's and Baker's diagnoses were merely "restatements of a positive x-ray" is unsupported by the evidence in the record. Because the ALJ rejected their opinions as being without legal or factual basis, he did not analyze the relations between their opinions and the opinions of the other doctors. Further, the ALJ did not consider whether the three adverse doctors, especially Dr. Fino, were using the more restrictive *medical* definition of pneumoconiosis when they determined that Cornett did not suffer from that condition. Remand, however, would not be appropriate if the ALJ properly determined that Cornett is not totally disabled, and we will next address that point.

Cornett appealed the ALJ's decision to the Department of Labor Benefits Review Board, and on December 22, 1998, the Board affirmed the ALJ's denial of benefits. *See* J.A. at 28. Cornett then moved the Board for reconsideration, which was also denied. *See id.* at 30. On April 12, 1999, Cornett filed a *pro se* petition for review with this court. *See id.* at 32. After Cornett filed his brief, the Director, OWCP—a nominal respondent in Cornett's petition for review—filed a brief arguing in support of Cornett's position. Benham Coal, the responsible coal company,[1] filed its response to Cornett's petition and a motion to strike the Director's brief.

### I. Benham Coal's Motion to Strike

Benham Coal's motion to strike argues that the Director was without authority to file a pro-petitioner brief in a BLBA case. As part of its argument, Benham Coal concedes that under *Ingalls Shipbuilding, Inc. v. Director, OWCP*, 519 U.S. 248 (1997), the Director may file a pro-petitioner brief in cases on review under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-50. In *Ingalls*, the Supreme Court held that under the LHWCA the Director has standing to argue in the courts of appeals as a respondent, and it explained that "[t]he Director, even as a respondent, is free to argue on behalf of the petitioner." 519 U.S. at 270. But, Benham Coal argues vociferously that this authority does not extend to cases under the Black Lung Benefits Act. We, however, disagree: the Director *does* have such authority in cases under the BLBA.

---

[1] Benham Coal's responsibility is not contested. South East Coal Company was the employer with which Cornett spent his last cumulative one-year period of coal mine employment. However, because it has gone bankrupt, South East Coal is not the responsible operator. *See* 20 C.F.R. § 725.492(a)(4). Looking back through the operator for which Cornett worked, he worked for Benham Coal, Inc. from 1977 to 1985. Thus, Benham Coal is the responsible operator in this action because Cornett had the most recent period of cumulative employment of not less than one year with Benham Coal. *See* 20 C.F.R. § 725.493(a)(1).

Although it is true, as Benham Coal argues, that *Ingalls* was decided under the LHWCA and that BLBA claims are administered in a slightly different fashion by the Department of Labor, these distinctions are of no moment.[2]   The BLBA itself explicitly provides for the Director's involvement in any case, *see* 30 U.S.C. § 932(k) ("The Secretary [represented by the Director] shall be a party in any proceeding relative to a claim for benefits" under the BLBA), and the legislative history suggests that Congress intended that the Director be authorized to file pro-petitioner briefs. *See* Senate Comm. on Human Resources, S. Rep. No. 95-209, at 22 (1977), *Black Lung Benefits Reform Act of 1977* ("This [Director's] participation is especially significant in black lung claims when, for example, the claimant has been unable to obtain legal representation or where significant issues relating to the interpretation of the Act are to be determined.") More importantly, this court has held that "[t]he Director is permitted to seek review of Board decisions in the courts to 'ensure proper and consistent administration' of the Act" under the BLBA. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1114 n.2 (6th Cir. 1984). And further, we have acknowledged the Director's authority to file a pro-petitioner brief as a respondent, precisely as he has done here. *See id.*; *Staton v. Norfolk & Western Ry. Co.*, 65 F.3d 55, 58 (6th Cir. 1995); *Bentley v. Peabody Coal Co.*, No. 96-3353, 1997 WL 560057, at *1, n.1 (6th Cir. Sept. 5, 1997) (unpublished

---

[2]Benham Coal claims that because the Director is an "adjudicator" under the BLBA but only a "mediator" (without the ability to bind the parties) under the LHWCA, the Director cannot now contradict the position of the district director. *See* Benham's Motion to Strike at 10, 11, 16. While it is true that the district director's decision may "be considered a final adjudication of a claim," 20 C.F.R. § 725.418, this is only the case if the claimant does not seek review of that decision, *see id.* Here, however, the district director only made an initial eligibility determination that was entirely superseded by the administrative law judge's decision. The Director can argue against the district director's decision in litigation, *see Hardisty v. Director, OWCP*, 776 F.2d 129, 130 (7th Cir. 1985); *Shortt v. Director, OWCP*, 766 F.2d 172, 173-74 (4th Cir. 1985); *Panvesi v. Director, OWCP*, 758 F.2d 956, 962-64 (3d Cir. 1985); so Benham Coal's "adjudicator/moderator" distinction does not carry the day.

---

as a smoker and pulmonary function studies. Plus, Dr. Baker went so far as to explain that "there is sufficient objective and clinical evidence to justify a diagnosis of coal workers' pneumoconiosis notwithstanding a negative x-ray." J.A. at 130.

Further, the ALJ apparently found additional support for discounting the reports of Drs. Vaezy and Baker because "[b]oth physicians admitted that the obstructive ventilatory defect could have been caused by either smoking or coal dust exposure." J.A. at 20. Under the circumstances, this can be viewed as tantamount to a finding that both coal dust exposure and smoking were operative factors and that it was impossible to allocate blame between them. However, under the statutory definition of pneumoconiosis, Cornett was not required to demonstrate that coal dust was the *only* cause of his current respiratory problems. He needed only to show that he has a chronic respiratory and pulmonary impairment "significantly related to, or substantially aggravated by dust exposure in coal mine employment." 20 C.F.R. § 718.201. It is sufficient that Cornett's exposure to Coal mine employment contributed "at least in part" to his pneumoconiosis, *Southard v. Director, OWCP*, 732 F.2d 66, 71 (6th Cir. 1984). Although neither report eliminated smoking as a cause, both doctors were unequivocal that coal dust exposure aggravated Cornett's pulmonary problems, thus supporting the existence of "legal," although possibly not "medical," pneumoconiosis. *See Hobbs*, 45 F.3d at 821; *Kline*, 877 F.2d at 1178. Thus, the ALJ committed a legal error by using the contributing causality of smoking as a reason for discounting Dr. Vaezy and Dr. Baker's opinions: accurately following the regulatory definition of pneumoconiosis cannot be grounds for rejecting a doctor's opinion.

In addition, the evidence indicating that Cornett did not have pneumoconiosis presents shortcomings that the ALJ apparently did not consider. Each of the three doctors unfavorable to Cornett reported that his respiratory problems were caused by his smoking habit *only*. If this is so, Cornett's

A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

20 C.F.R. § 718.202(a)(4). In considering Cornett's proof under this regulation, the ALJ credited as well reasoned the opinions of Drs. Broudy, Dahhan and Fino, all of whom had decided that Cornett did not suffer from pneumoconiosis. The ALJ roundly rejected the contrary opinions of Dr. Vaezy and Dr. Baker, thus concluding that Cornett failed to demonstrate that he had coal workers' pneumoconiosis under the regulation. But we are troubled by this decision because, in rejecting them as poorly reasoned, the ALJ mischaracterized the opinions of Dr. Vaezy and Dr. Baker in critical respects.

First, the ALJ's opinion erroneously states that Drs. Vaezy and Baker "based their diagnoses of coal workers' pneumoconiosis on their interpretations of an x-ray and a history of coal dust exposure." J.A. at 19. The ALJ then explained that "a diagnosis or medical opinion which is merely a restatement of a positive x-ray is not a reasoned medical opinion within the meaning of § 718.202(a)(4), " *id*., and further explained that since exposure to coal dust is an insufficient indicator standing alone, their opinions were "poorly reasoned" and entitled to "little weight," *id*. We agree that a mere restatement of an x-ray should not count as a reasoned medical judgment under § 718.202(a)(4), but the ALJ's factual description of the doctors' reports is clearly inaccurate. As an examination of the reports reveals, Dr. Vaezy and Dr. Baker each based his diagnosis on a number of factors. In addition to x-rays, they each considered their examinations of Cornett, his history in the mines, his history

---

opinion). Therefore, despite Benham Coal's arguments to the contrary, we hold that the Director, as a respondent, is authorized to file a pro-petitioner brief in this court in a claimant's appeal from a Board decision under the BLBA.

But, Benham Coal also argues that, even if the Director generally has the authority to file a pro-petitioner brief, the Supreme Court's decision in *Director, OWCP v. Perini N. River Assocs*., 459 U.S. 297 (1983), establishes prerequisites for such a filing and that those prerequisites have not been met here. Benham Coal contends that in *Perini*—which, like *Ingalls*, was decided under the LHWCA—the Supreme Court grounded the Director's standing to challenge a decision by the Board on two conditions: (1) the claimant is present on appeal and (2) the claimant has filed a supporting brief raising the same issues as the Director. *See id*. at 305-06. Here, Benham Coal claims that "we know of no brief, *pro se* or otherwise, having been filed by Cornett before this Court." Benham's Motion to Strike at 5. Benham concludes that the Director does not have standing under *Perini* because Cornett is not "present," and the Director's brief should be stricken accordingly. But even assuming that the Benham's interpretation of *Perini* is correct—and we are not convinced that it is—Benham Coal's argument fails. As a look at the record demonstrates, Benham Coal's assertion that Cornett is not "present" is just plain wrong. Cornett completed his *pro se* petitioner's brief on a form provided by the Sixth Circuit (appropriately titled "PRO SE PETITIONER'S BRIEF") and filed it with the Clerk on April 26, 1999. In that form brief, Cornett clearly points to the opinion of Drs. Vaezy and Baker as the focus of the dispute. Thus, it seems that the claimant is present and his brief has raised the issues that the Director also raises, albeit in much greater detail, in his brief.

Finally, Benham Coal argues that because neither Cornett nor the Director raised the issue involving the reports from Drs. Vaezy and Baker before the Board, they are barred from raising it now. With respect to the Director's absence below, its absence before the Board does not preclude the Director from participating on appeal. *See Goldsmith v. Director,*

*OWCP*, 838 F.2d 1079, 1080 (9th Cir. 1988). As for Cornett's involvement, Benham Coal's claim that he failed to exhaust his administrative remedies by not raising the present issue before the Board also fails. The Board itself has a long-standing practice of assuming that a *pro se* litigant appealing an ALJ's decision raises all adversely-decided issues, including the issue whether the ALJ's decision was supported by substantial evidence. *See, e.g., McFall v. Jewel Ridge Coal Corp.*, 12 BLACK LUNG REP. (MB) 1-176 (Ben. Rev. Bd. 1989). Cornett was *pro se* before the Board, and, indeed, the Board's decision rejecting Cornett's claims specifically referenced this long-standing practice. Because the Board assumed that Cornett raised all adversely-decided issues, we find that Cornett exhausted his administrative remedies. Accordingly, we deny Benham Coal's motion to strike the Director's brief.

## II. REVIEW OF DECISION

Because Cornett filed his claim for benefits after March 31, 1980, his entitlement to benefits is governed by Part 718 of Title 20 of the Code of Federal Regulations. *See* 20 C.F.R. § 718.2; *Saginaw Mining Co. v. Forda*, 879 F.2d 198, 204 (6th Cir. 1989). In order to receive benefits, Cornett must show by a preponderance of the evidence that (1) he has pneumoconiosis, (2) his pneumoconiosis arose out of his coal mining employment, and (3) he is totally disabled as a result. *See* 20 C.F.R. §§ 718.202, 718.203, 718.204. *See also Adams v. Director, OWCP*, 886 F.2d 818, 820 (6th Cir. 1989). The ALJ found, and the Board affirmed, that Cornett failed to establish either that he suffered from coal workers' pneumoconiosis or that he was totally disabled. Cornett and the Director challenge both of these conclusions. When reviewing a denial of benefits under the BLBA, we focus our review on the decision of the ALJ. *See Youghiogheny & Ohio Coal Co. v. McAngues*, 996 F.2d 130, 135 (6th Cir. 1993); *Zimmerman v. Director, OWCP*, 871 F.2d 564, 567 (6th Cir. 1989) (the court must consider whether the ALJ's decision—not the Board's decision—was based on substantial evidence). "We review the ALJ's decision to determine

whether it is supported by substantial evidence and is consistent with applicable law," *see Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995); a remand is appropriate when the ALJ fails to consider all of the evidence under the proper legal standard, *see Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983). *See also Damron v. Secretary of Health and Human Servs.*, 778 F.2d 279, 281 (6th Cir. 1985) (remanding because ALJ "mechanically and inappropriately applied" regulation and failed to note all information in physician's report).

### A. Coal Workers' Pneumoconiosis

Under the Black Lung Benefits Act, the term "pneumoconiosis" is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). The regulations further clarify that "[f]or purposes of this definition, a disease 'arising out of coal mine employment' includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201. This "legal" definition of pneumoconiosis, as other circuits have noted, "encompasses a wider range of afflictions than does the more restrictive medical definition of pneumoconiosis." *Kline v. Director, OWCP*, 877 F.2d 1175, 1178 (3d Cir. 1989). *See also Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819, 821 (4th Cir. 1995).

The BLBA regulations provide a claimant with four different ways of demonstrating that he has "legal" pneumoconiosis. *See* 20 C.F.R. § 718.202. The ALJ considered each of these four and found that Cornett did not establish that he had pneumoconiosis under any of them. Cornett and the Director only challenge the ALJ's finding that Cornett did not establish pneumoconiosis under 20 C.F.R. § 718.202(a)(4). That regulation reads, in its entirety, as follows: