**Rose ZIEMBA, Widow of Stanley Ziemba, Petitioner,**

v.

**CONSOLIDATION COAL COMPANY and Director, Office of Workers' Compensation Programs, Respondents.**

No. 01–3890.

United States Court of Appeals, Sixth Circuit.

Feb. 3, 2003.

---

* The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Before MARTIN, Chief Circuit Judge, DAUGHTREY, Circuit Judge, and O'MALLEY,* District Judge.

PER CURIAM.

In this appeal from the denial of black lung benefits by the Department of Labor's Benefits Review Board, the claimant is the wife of deceased miner Stanley Ziemba, who had worked in the coal mines for 46 years before his retirement in 1986. For the last 25 of those years, he was employed by respondent Consolidation Coal and worked underground as a roof bolter. After his sudden death in 1996 from a myocardial infarction, his widow applied for survivor's benefits under 30 U.S.C. §§ 901 *et seq.*, the Black Lung Benefits Act. In May 2000, however, an admin-

istrative law judge denied benefits, and the ruling was upheld by the Board. In order to reverse that decision, we would have to conclude that the ALJ's determination was not supported by substantial evidence. *See Cornett v. Benham Coal, Inc.,* 227 F.3d 569, 575 (6th Cir.2000). Because we cannot say that this is the case here, we must sustain the Board's denial of survivor's benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

On the day of his death, Stanley Ziemba awoke with severe chest pain and collapsed shortly thereafter. He was taken to the hospital, but attempts at resuscitation were unsuccessful. On his death certificate, the cause of death was noted as "hypertensive cardiovascular disease." An autopsy was performed by Dr. Jaywant Parmar, who diagnosed the presence of coal-worker's pneumoconiosis, grade 3/4, but concluded that it had not contributed to Ziemba's death.

The medical records indicate that Ziemba had been treated for hypertension, that he was a long-time smoker and that, as early as 1980, he had experienced difficulty with his breathing. In 1990, an administrative law judge found that Ziemba had pneumoconiosis but held that he could not establish total disability. In 1994, an administrative law judge again denied benefits, finding that no material change in circumstances had occurred. In 1995, Ziemba was proscribed a bronchodilator for his breathing problems and, in 1996, he underwent surgery to remove nasal polyps and to correct a nasal septal deviation.

Some 18 months after Stanley Ziemba died, his wife applied for survivor's bene-

* The Hon. Kathleen M. O'Malley, United States District Court for the Northern District of Ohio, sitting by designation.

fits. Initially, her claim was denied because there was insufficient evidence to support a finding that pneumoconiosis caused her husband's death. Subsequently, however, two physicians submitted letters at the claimant's request, asserting that pneumoconiosis did contribute to the miner's death, and a district director of the Office of Workers' Compensation Programs of the Department of Labor awarded benefits to his wife. When Consolidation Coal was notified of this decision, the company requested a review, and the matter was referred to an administrative law judge for an evidentiary hearing.

At the hearing, held in March 2000, the issues were limited to (1) whether Ziemba had pneumoconiosis, (2) whether that pneumoconiosis arose out of his coal mine employment, and (3) whether his death was due to pneumoconiosis. *See* 20 C.F.R. § 718.205(a). At the hearing, the claimant objected to the admission of a report by Dr. Jerome Kleinerman, who died after writing the report but before he could be deposed. The administrative law judge determined that the report was admissible and included it in the record.

The ALJ received evidence from two physicians, Dr. George Cholak and Dr. Attila Lenkey, who both indicated their belief that Stanley had pneumoconiosis and that the pneumoconiosis had contributed, if only slightly, to his death. However, the judge found that the opinions of these two physicians were not fully credible. Instead, he credited the reports and testimony of several pathologists, including Dr.

Jerome Kleinerman, Dr. Joseph Tomashefski, and Dr. Richard Naeye, and those of two physicians who had prepared consultative reports on behalf of the company, Dr. Gregory Fino and Dr. Robert Altmeyer. From this evidence, the ALJ determined that Ziemba did not suffer from pneumoconiosis. He also concluded, even assuming the presence of pneumoconiosis, that the disease did not cause or contribute to Ziemba's death. Based on these conclusions, the administrative law judge denied the claim for benefits.

On appeal, the Benefits Review Board apparently did not review the ALJ's determination that the miner did not suffer from pneumoconiosis, instead concluding that there was sufficient evidence to support a finding that pneumoconiosis did not contribute to Ziemba's death. Because the Board upheld this finding by the administrative law judge, it found that the claimant had failed to establish an essential element of her claim and, therefore, affirmed the denial of benefits.

## *ANALYSIS*

On appeal to this court, the claimant objects to the ALJ's consideration of the report by Dr. Kleinerman, who died shortly after it was written and before he could be deposed. She also contends that the judge utilized the wrong standard in reaching his determination that her husband had not suffered from pneumoconiosis and that his conclusion in this regard was not supported by sufficient evidence.[1]

1. Specifically, claimant points out that the legal definition of pneumoconiosis is different from and broader than the standard medical definition of that term. *See, e.g., Cornett v. Benham Coal, Inc.,* 227 F.3d 569, 575 (6th Cir.2000) ("This legal definition of pneumoconiosis ... encompasses a wider range of afflictions that does the more restrictive medical definition of pneumoconiosis"). The

claimant asserts that the ALJ ignored this distinction and relied, instead, on medical professionals whose reports similarly ignored this distinction in concluding that Ziemba did not suffer from pneumoconiosis at the time of his death. The claimant is correct in her statement of the law in this area and may, indeed, be correct that the reports on which the ALJ relied did not adequately take into

Finally, the claimant asserts that the ALJ ignored the conclusions of his treating physician when the ALJ concluded that pneumoconiosis did not hasten Ziemba's death.

Based on the summary of the evidence that follows, we conclude that any error in connection with the admission of Dr. Kleinerman's report was, at most, harmless error. Moreover, whether or not the ALJ utilized the correct standard with regard to his finding that pneumoconiosis was not present at the time of Ziemba's death, the ALJ's conclusions that the miner's death was not caused by or hastened by pneumoconiosis is supported by substantial evidence in the record and must, accordingly, be affirmed.

The burden was on the claimant to establish that pneumoconiosis caused or contributed to her husband's death. *See* 20 C.F.R. § 718.205(c). Under the regulations, this element is satisfied when pneumoconiosis was a "substantially contributing cause or factor leading to the miner's death" or if it hastened his death. *See id.; see also Brown v. Rock Creek Mining Co.,* 996 F.2d 812, 816 (6th Cir.1993) (employing "hastening" standard).

The administrative law judge found that the claimant had failed to establish that pneumoconiosis caused or contributed to her husband's death. In reaching this conclusion, he noted that four of the pathologists found that pneumoconiosis was unrelated to Ziemba's death. He also discredited the testimony of the two physicians, Drs. Cholak and Lenkey, who found a connection between the death and pneumoconiosis, noting that "[t]heir reports [we]re conclusory and contain[ed] little or no reasoning as to how pneumoconiosis contributed to the miner's death."

The record shows that even though the physicians credited by the ALJ found no pneumoconiosis to be present, several explicitly considered whether any lung disease contributed to Ziemba's death. For example, Dr. Tomashefski testified that "even if you made the assumption that [the lung disease] was due to coal dust exposure, it would not have contributed in any way, shape or form to his sudden death." Dr. Kleinerman stated that in his opinion and "with reasonable medical certainty Stanley [Ziemba]'s exposure to coal mine dust did not cause, did not contribute to, and did not hasten his death. Stanley would have died as and when he did, even if he had never been exposed to coal mine dust." Dr. Fino wrote, "Even if I assume pneumoconiosis was present, he would have died as and when he did had he never stepped foot in the mines."

In an attempt to establish that her husband's death was at least hastened by pneumoconiosis, the claimant presented a brief letter from Dr. Cholak to the claims examiner at the Department of Labor and the testimony of Dr. Lenkey. The letter from Dr. Cholak stated simply, "The cause of death was listed as Arteriosclerotic Heart Disease, but I feel that the Miner's Black Lung Disease was [(1)] caused by his coal mine work and [(2)] contributed significantly to the coal miner[']s death." As noted by the administrative law judge, Dr. Cholak provided no explanation for how pneumoconiosis contributed to Ziemba's death.

Dr. Lenkey's deposition testimony, although further developed, was equivocal. He explained that the miner's lung function was impaired, which in turn meant that he had increased work in breathing.

account the distinction between the medical and legal definitions of the disease Given our other conclusions, however, these points are

irrelevant to the validity of the ALJ's ultimate decision to deny benefits.

It was his opinion that "[t]his increased work of breathing in all likelihood contributed to the overall stress and inability to deal with an insult such as a myocardial infarction." When asked whether Ziemba would have survived the myocardial infarction absent the lung disease, Dr. Lenkey replied, "Only heaven knows." According to him, the lung disease "m[ight] have been enough to just put him over the edge and, thus, helped contribute to his demise."

The administrative law judge discounted the opinions of both physicians, finding that "[t]heir reports are conclusory and contain [little or no] reasoning as to how pneumoconiosis contributed to the miner's death." He added:

> I believe that it is also noteworthy that Dr. Cholak made no mention of pneumoconiosis in the death certificate. Dr. Lenkey attempted to justify a causal connection between pneumoconiosis and the decedent's death in his deposition, but his attempt falls far short of establishing a causal relationship.... Dr. Lenkey's deposition testimony is too speculative and vague to support a finding that the miner's pneumoconiosis caused, contributed to, or hastened his death. The opinions of Dr. Cholak and Dr. Lenkey are not credible.

Instead, the ALJ credited the testimony of "[t]he four pathologists in this case [who] have determined that the miner's death was unrelated to pneumoconiosis":

> They attributed his death to a sudden cardiac arrhythmia caused by coronary artery disease, which is consistent with claimant's testimony of the miner's chest pain in the middle of the night. As pathologists, they have more knowledge as to the cause of an individual's death than physicians who do not have training in pathology.

## CONCLUSION

It is within the discretion of the administrative law judge to assess the credibility of physicians; moreover, it is not for us to reassess their credibility. We conclude that the determination that pneumoconiosis did not contribute to Stanley's death is supported by substantial evidence and was reached in conformance with applicable law. We therefore AFFIRM the ruling by the Benefits Review Board that sustained the decision of the administrative law judge denying survivor's benefits in this case.