FILED
United States Court of Appeals
Tenth Circuit

**July 29, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ENERGY WEST MINING COMPANY,

      Petitioner,

v.

GEARY HUNSINGER,

      Respondent,

and

OFFICE OF WORKERS'
COMPENSATION PROGRAMS;
UNITED STATES DEPARTMENT OF
LABOR,

      Parties in Interest,

and

BENEFITS REVIEW BOARD,

      Statutory Respondent.

No. 09-9550
(BRB No. 08-0642 BLA)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Petitioner-Employer Energy West Mining Company seeks a petition for review of a Benefits Review Board (BRB) decision and order affirming an Administrative Law Judge's (ALJ) award of full black lung benefits to Respondent-Claimant Mr. Geary Hunsinger. Energy West asserts Mr. Hunsinger's twenty-five years of smoking cigarettes caused his lung condition, not his twenty-four years of exposure to coal dust as a miner, thereby precluding him from receiving black lung benefits. We find the BRB correctly concluded the ALJ's decision was supported by substantial evidence and not contrary to the law, therefore we DENY Energy West's request.

BACKGROUND

Title IV of the Federal Coal Mine and Safety Act of 1969, as amended by the Black Lung Benefits Revenue Act of 1981, provides benefits to miners who are totally disabled by pneumoconiosis, commonly known as the "black lung." 20 C.F.R. § 718.1(a). In order to obtain these benefits the afflicted miner must file a claim with the Office for Workers' Compensation Programs (OWCP), who gathers the medical evidence needed for a determination of benefits. 20 C.F.R. § 718.101(a). The claimant has the burden to prove: 1) he suffers from pneumoconiosis; 2) his pneumoconiosis arose out of his coal mine employment; and 3) the pneumoconiosis is substantially causing a totally disabling pulmonary disease. *Wyoming Fuel Co. v. Director, OWCP*, 90 F.3d 1502, 1502-05 (10th Cir. 1996); 30 U.S.C. § 901(a); 20 C.F.R. §§ 718.201-04.

"Legal pneumoconiosis" includes any chronic lung disease or impairment "arising

out of coal mine employment."[1]  20 C.F.R. § 718.201(a)(2).  It occurs when the disease or impairment is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment."  20 C.F.R. § 718.201(b).  Legal pneumoconiosis can be established by the "reasoned medical opinion" of a "physician ... exercising sound medical judgment ... notwithstanding a negative X-ray" if that opinion is "based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories."  20 C.F.R. § 708.202(4).

In this case, Mr. Hunsinger worked for at least twenty-four years at Energy West's Deer Creek Mine near Huntington, Utah.  He always worked underground and for the final fifteen years of his employment served as a "beltman," a position which exposed Mr. Hunsinger's face to large amounts of coal dust.  Mr. Hunsinger began having difficulty breathing in 2000 and by 2005 was placed on supplemental oxygen for twenty-four hours a day.  He now suffers from chronic obstructive pulmonary disease (COPD).

In 2005, Mr. Hunsinger filed a claim for black lung benefits.  The OWCP determined Mr. Hunsinger suffered from pneumoconiosis caused in substantial part by his work in the coal mines.  Energy West disputed these findings and requested a de novo hearing before an ALJ.  At this hearing, five physicians' opinions were presented.  ALJ Richard K. Malamphy presided and issued a Decision and Order awarding Mr. Hunsinger

---

[1]While the Act provides for both "legal" and "clinical" pneumoconiosis, only legal pneumoconiosis is relevant here.  20 C.F.R. § 718.201(a).

full benefits. All five physicians agreed Mr. Hunsinger suffered from a totally disabling pulmonary disease, but disagreed as to its cause. Drs. Gagon, Radley, and James determined Mr. Hunsinger's COPD was significantly caused by or substantially aggravated by his prolonged exposure to coal dust while Drs. Farney and Rosenberg solely blamed Mr. Hunsinger's twenty-five year habit of smoking cigarettes.

Dr. Shane Gagon is a family medicine practitioner in Price, Utah. Dr. Gagon examined Mr. Hunsinger per OWCP's request in response to Mr. Hunsinger's filing for black lung benefits. Dr. Gagon came to his conclusion based on Mr. Hunsinger's medical history, arterial blood gases, pulmonary function tests, and one chest x-ray which suggested pneumoconiosis.[2] He testified Mr. Hunsinger's smoking and coal dust exposure were both contributing factors. Dr. Gagon opined that Mr. Hunsinger's pulmonary function test results were much worse than his other patients with a twenty-five year history of smoking and therefore the coal mine dust must have played a significant role in the development of his respiratory disease.

Dr. David James is board certified in internal medicine, pulmonary disease, and critical care medicine. He evaluated Mr. Hunsinger and determined that based on his examination, testing, medical research and the patient's medical history, Mr. Hunsinger's

---

[2]Though several chest x-rays were taken by various doctors, only one x-ray suggested Mr. Hunsinger suffered from pneumoconiosis. The others did not support such a finding. ALJ Malamphy concluded this single x-ray was, by itself, insufficient to meet Mr. Hunsinger's burden of proof. Decision and Order of ALJ Malamphy, *G.H. v. Energy West Mining Co.*, 2006-BLA-05665, p. 5 (hereinafter "Decision and Order").

COPD was due to significant coal dust exposure and cigarette smoking. Dr. James noted Mr. Hunsinger's lung disease was much worse than expected based solely on his history of cigarette smoking. Relying on fifteen years of experience and several epidemiological studies, Dr. James determined it was the significant coal dust exposure that caused Mr. Hunsinger's lung disease despite the absence of any fibrotic changes visible via x-ray.

Dr. Karen Radley is board certified in family practice and has been Mr. Hunsinger's primary treating physician since 2003. She determined his twenty-four years of coal dust exposure caused his severe COPD. Given Mr. Hunsinger's young age and the severity of his COPD, he would have been an "exceptional outlier" for cigarette smoking to have been the sole cause and therefore coal dust exposure was a significant factor. While unable to assign a percentage of the causation to either tobacco use or coal dust exposure, Dr. Radley determined the advanced nature of Mr. Hunsinger's COPD was due to both factors. Therefore, she found Mr. Hunsinger's condition constituted legal pneumonoconiosis.

Dr. Robert Farney is a pulmonologist who determined Mr. Hunsinger's severe pulmonary impairment and chronic respiratory failure stemmed from his history of tobacco use, not coal dust exposure. His opinion was largely based on the fact Mr. Hunsinger's chest scans showed no evidence of a fibrotic reaction in the lungs. While Dr. Farney admitted Mr. Hunsinger's twenty-four years of underground employment would have put him at risk for developing coal dust-induced COPD (which he agreed could exist without a fibrotic reaction in the lungs), he still felt the cigarette smoking was the sole

cause. Although the lab results he relied on were consistent with either a history of coal dust exposure or cigarette smoking, Dr. Farney eliminated coal dust exposure as a significant causal factor.

Dr. David Rosenberg is a pulmonologist who concluded Mr. Hunsinger's COPD was caused by smoking and not coal dust because there was no "micronodularity" in the lungs. He agreed that exposure to coal dust is a significant factor in the development of COPD. Dr. Rosenberg also agreed the factors he relied on for his opinion were not smoking-specific test results but were results consistent with coal dust exposure. Nonetheless, he felt Mr. Hunsinger suffered from smoking-induced COPD.

After hearing the opinions and analyses by the five doctors, ALJ Malamphy decided Mr. Hunsinger's condition was significantly due to or substantially aggravated by exposure to coal dust. The ALJ gave more weight to the testimony of Mr. Hunsinger's primary treating physician and found Drs. Farney and Rosenberg failed to explain why twenty-four years of coal dust exposure had not significantly or substantially brought about Mr. Hunsinger's condition. Finding Mr. Hunsinger suffered from legal pneumoconiosis, the ALJ affirmed the award of benefits.

Energy West appealed to the BRB which determined the ALJ's decision was supported by substantial evidence, consistent with the applicable law, and contained no reversible errors. Therefore, the BRB affirmed the award and Energy West filed its petition for review with this court.

DISCUSSION

We have jurisdiction to review the BRB's final order pursuant to Section 21(c) of the Longshore and Harbor Workers' Compensation Act. 33 U.S.C. § 921(c). When reviewing claims for benefits under the Black Lung Benefits Act, this court determines only whether the BRB correctly concluded the ALJ's decision was supported by substantial evidence and not contrary to law. *Northern Coal Co. v. Director, OWCP*, 100 F.3d 871, 873 (10th Cir. 1996). Substantial evidence exists where there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hansen v. Director, OWCP*, 984 F.2d 364, 368 (10th Cir. 1993). "[I]n deciding whether substantial evidence exists to support the ALJ's decision, 'the court cannot reweigh the evidence, but may only inquire into the existence of evidence to support the trier of fact.'" *Id.* (quoting *Kaiser Steel Corp. v. Director, OWCP*, 748 F.2d 1426, 1430 (10th Cir. 1984)). Credibility determinations with respect to conflicting medical opinions are left to the province of the ALJ. *Id.* at 368, 370.

Energy West asserts four errors on appeal: 1) there was no legitimate basis to establish Mr. Hunsinger's condition was caused by coal mine dust exposure; 2) the ALJ improperly credited Dr. Radley's opinion with greater weight as Mr. Hunsinger's treating physician; 3) the ALJ reversed the burden of proof by requiring Energy West's experts to explain why coal dust exposure did not cause Mr. Hunsinger's condition; and 4) there was insufficient evidence to support the decision.

I. Evidence that the coal mine dust caused Mr. Hunsinger's COPD

Energy West asserts the ALJ erred by presuming there was a causal relationship between coal dust exposure and Mr. Hunsinger's COPD. Specifically, Energy West argues the opinions of Doctors Radley, James and Gagon were inadequate in both their reasoning and explanation of causation and the ALJ improperly relied on the persuasive but not binding authority of *Cornett v. Benham Coal, Inc.*, 227 F.3d 569 (6th Cir. 2000). After careful review of the record, we find Energy West's arguments are without merit.

It is not our role to reweigh the evidence or make determinations of credibility. *Hansen*, 984 F.2d at 368. As an appellate court we simply review the record to determine whether there was sufficient relevant evidence to support a reasonable conclusion on the part of the trier of fact. *Id.* In this case there was substantial evidence to support ALJ Malamphy's conclusion Mr. Hunsinger's COPD was significantly caused by or substantially aggravated by his twenty-four years of coal dust exposure. All three physicians examined Mr. Hunsinger, performed tests, reviewed medical research and drew upon their experience in the relevant fields. The doctors each explained why they believed coal dust exposure caused Mr. Hunsinger's COPD. There was substantial evidence to support ALJ Malamphy's conclusion that the coal dust played a significant role in causing Mr. Hunsinger's COPD.

Additionally, ALJ Malamphy properly relied on *Cornett*'s reasoning. In *Cornett* the Sixth Circuit clarified that when a physician's testimony identifies both smoking and coal dust exposure as "operative factors" causing a miner's COPD but it is "impossible to allocate blame between them" the statutory definition of legal pneumoconiosis is

nonetheless met.  227 F.3d at 576.  This is because a miner is "*not* required to demonstrate that coal dust was the *only cause* of his current respiratory problems. He need[s] only to show that he has a chronic respiratory and pulmonary impairment 'significantly related to, or substantially aggravated by, dust exposure in coal mine employment.'"  *Id.* (quoting 20 C.F.R. § 718.201) (emphasis added).  The fact that cigarette smoking may be an additional cause of the condition does not preclude the miner from proving his coal dust exposure contributed to or caused his pneumoconiosis. *Id.*

Not only are *Cornett*'s facts strikingly similar to those before us in that the relevant question was whether the miner's COPD was caused by smoking or coal dust exposure, but *Cornett*'s reasoning has also been adopted by this Circuit.  *Energy West v. Oliver*, 555 F.3d 1211, 1218 (10th Cir. 2009) ("Mr. Oliver was not required to establish that coal mine dust was the only cause of his COPD; it is enough that his respiratory disease was 'significantly related to, or substantially aggravated by' mining exposure to coal dust. *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 575 (6th Cir. 2000); 20 C.F.R. § 718.201(b).").  Therefore, it was not error for the ALJ to rely on *Cornett* when explaining his decision.

II.  The weight of Dr. Radley's opinion as Mr. Hunsinger's treating physician

Administrative Law Judges are permitted to give the opinion of a claimant's treating physician "controlling weight" provided there is a sufficient physician-patient relationship and the opinion is reasonable and credible.  20 C.F.R. § 718.104.  That

relationship is deemed sufficient when specific criteria are met.[3] Here, ALJ Malamphy decided that "[g]iven [Dr. Radley's] status as a treating physician, it may be proper to accord [her] opinion greater probative value." Decision and Order, p. 12. Energy West contends the ALJ erred because he failed to explicitly discuss the mandatory criterion of the physician-patient relationship and neglected to consider the contradictory evidence from the other doctors.

We find no such error. ALJ Malamphy noted the number of years Dr. Radley treated Mr. Hunsinger, the treatment provided, nature of the relationship and the frequency of those treatments. The necessary criteria to establish a treating physician relationship were met. ALJ Malamphy also extensively discussed his consideration of the opinions of Drs. Farney and Rosenberg before deciding that "it is reasonable to conclude that [Dr. Radley] has a more through [*sic.*] understanding of the Miner's history and ongoing condition" and it would be appropriate to give her opinion greater probative value. Decision and Order, p. 12. ALJ Malamphy did not err by giving Dr. Radley's opinion greater weight as Mr. Hunsinger's treating physician.

### III. The burden of proving causation

Both parties agree: as the claimant, Mr. Hunsinger had the burden to establish his COPD was caused or aggravated by coal dust exposure. *See e.g. Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 280-81 (1994). Energy West argues ALJ Malamphy

---

[3]Those criteria are: the nature of the relationship, its duration, and the frequency and extent of treatment. *See* 20 C.F.R. § 718.104.

reversed the burden of proof and required Energy West to prove coal dust exposure played no role in causing Mr. Hunsinger's COPD. This argument is not supported by the record.

ALJ Malamphy made clear it was Mr. Hunsinger's burden to establish causation. Decision and Order, p. 13 ("With legal pneumoconiosis, as has been found here, Claimant must demonstrate that his respiratory ailment was caused by coal dust exposure...."). The discussion of whether Drs. Farney and Rosenberg had been able to eliminate coal dust as a cause of Mr. Hunsinger's COPD was in reference to how much weight to credit their opinions. ALJ Malamphy found it persuasive that the doctors were unable to explain why they ruled out coal dust exposure as a possible cause, therefore weakening their opinions. *Id.*, at 13 ("In this case, I do not find the opinions of Drs. Rosenberg and Farney sufficiently persuasive to conclude that the Claimant's twenty-five years of coal mine employment played no role in his lung disease.").

Mr. Hunsinger's burden was to prove that his condition was significantly related to or substantially aggravated by coal dust exposure. While his cigarette smoking may have been an additional causal factor, Mr. Hunsinger was not required to establish coal dust exposure was the only cause of his condition. *Oliver*, 555 F.3d at 1218. Drs. Farney and Rosenberg testified that Mr. Hunsinger's condition was caused by cigarette smoking but did not adequately address the possible effect of Mr. Hunsinger's long history of coal dust exposure. Their opinion as to cigarette smoking noted an additional cause but did not discredit the impact of coal dust exposure. ALJ Malamphy did not reverse the burden of

-11-

proof. He examined the doctors' opinions for whether they directly rebutted the evidence that coal dust exposure had been a significant causal factor.

## IV. Sufficiency of the evidence

Energy West's final contention is that ALJ Malamphy failed to resolve all of the conflicts between the evidence presented by the various doctors and thus did not fulfill all the requirements of the Black Lung Benefits Act. Energy West asserts the ALJ avoided the scientific conflict and there was insufficient evidence to support his decision to credit the opinions of Drs. Radley, Gagon and James but not the opinions of Drs. Farney and Rosenberg.

However, this Circuit has held "[t]his court cannot substitute its assessment of the credibility of experts for that of the ALJ, and thus cannot accept Energy West's invitation to reexamine the weight of the medical evidence supporting the ALJ's decision." *Oliver*, 555 F.3d at 1218-19. Energy West's arguments are asking this court to do what it cannot. As discussed above, the ALJ's decision was supported by substantial evidence and the BRB did not err in so finding and affirming the award of benefits.

## CONCLUSION

The BRB properly affirmed ALJ's Malamphy's award of benefits to Mr. Hunsinger. Therefore, we DENY Energy West's petition for review.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

-12-