NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0129n.06

No. 10-4166

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Feb 03, 2012**

LEONARD GREEN, Clerk

ISLAND CREEK COAL CO.,                )
                                       )
    Petitioner,                        )
                                       )
v.                                     )    ON APPEAL FROM THE UNITED
                                       )    STATES DEPARTMENT OF LABOR
JIMMY GARRETT,                         )    BENEFITS REVIEW BOARD
                                       )
    Respondent,                        )
                                       )
and                                    )
                                       )
DIRECTOR, OFFICE OF WORKERS'           )
COMPENSATION PROGRAMS, UNITED          )
STATES DEPARTMENT OF LABOR,            )
                                       )
    Party-in-Interest.

Before: SUHRHEINRICH, SUTTON and COOK, Circuit Judges.

SUTTON, Circuit Judge. After working in the coal mines for sixteen years and smoking a pack of cigarettes a day for most of his adult life, Jimmy Garrett developed lung disease. Several doctors hired by the coal company say that coal mining had nothing to do with it; some treating physicians hired by Garrett say that his work in the mines contributed to the disease. An Administrative Law Judge and the Benefits Review Board sided with Garrett's doctors. We affirm.

I.

Jimmy Garrett worked in the coal mines of Island Creek Coal Company from 1976 until 1992. He also smoked a pack of cigarettes a day, on average, from the mid-1950s until 2006. While all of the evaluating doctors agree he has severe, disabling pulmonary disease, they disagree about whether his work in the coal mines contributed to the disease. Eight doctors concluded that coal did not contribute to the disease, pointing out that his symptoms, x-rays and lab tests suggest tobacco use as the sole cause. Three others, including two treating physicians, concluded that coal dust was a contributing cause.

An ALJ initially determined that coal did not contribute to Garrett's disease, and denied his application for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq*. The Benefits Review Board affirmed. Garrett filed a timely request for modification, which prompted the ALJ to revisit, then reverse, the denial of benefits. The Benefits Review Board affirmed.

II.

In granting benefits, the ALJ primarily relied on the opinion of Dr. William Houser, a treating physician who opined that Garrett suffered from coal worker's pneumoconiosis. In seven letters and reports, related to numerous visits and physical exams, Dr. Houser diagnosed Garrett with coal worker's pneumoconiosis and cited evidence to support the diagnosis. Many of the reports are not models of cause-and-effect explanation, but together they provide sufficient evidence to support the award. *See* 20 C.F.R. § 718.201(a)(2), (b)(3) (providing that legal pneumoconiosis includes any

respiratory impairments "significantly related to, or substantially aggravated by" exposure to coal dust during employment in the mines); *see also* 33 U.S.C. § 921(b) (making the ALJ's findings of fact "conclusive if supported by substantial evidence in the record considered as a whole").

Start with Dr. Houser's October 4, 2001 letter. It reported that two x-rays showed pneumoconiosis, and opined that "the cause of Mr. Garrett's disability is related to coal worker's pneumoconiosis . . . . The coal worker's pneumoconiosis is related to exposure to coal and rock dust . . . . I believe his chronic obstructive pulmonary disease is related to former cigarette smoking and exposure to coal and rock dusts. These statements are made within a reasonable degree of medical certainty and are supported by medical literature." Appellant's App'x at 87. Dr. Houser then discussed five articles documenting how coal dust could contribute to this kind of airflow obstruction.

A later letter, dated July 23, 2004, added pulmonary function tests to the array of evidence and cited several additional articles discussing the increased risk of pulmonary disease for workers exposed to coal dust as compared to those whose only risk factor is cigarette smoking. Over time, Dr. Houser added more evidence to support the diagnosis: new pulmonary function tests in January 2007, and new x-rays in March 2007.

No doubt, portions of Dr. Houser's reports are long on conclusions and short on explanations, and the ALJ recognized as much. But when "considered in light of the record as a whole" and in the context of Dr. Houser's long "history of treating" Garrett, the ALJ found the applicant's claim

"sufficiently well-documented and reasoned." *Id.* at 398–99. Were we in the ALJ's shoes, we might not have come to the same conclusion. But we are not. Our role is limited to determining whether there is substantial evidence to support the ALJ's conclusion that Garrett's sixteen years of coal mining "was significantly related" to his lung disease. *Eastover Mining Co. v. Williams*, 338 F.3d 501, 508 (6th Cir. 2003). There is.

Even if the x-ray evidence did not establish causation by itself, as the ALJ acknowledged, Dr. Houser was free to the use the x-rays as one part of Garrett's broader medical history. *See* 20 C.F.R. § 718.202(a)(4); *Cornett v. Benham Coal Co.*, 227 F.3d 569, 576 (6th Cir. 2000) (agreeing that "mere restatement" of a positive x-ray is insufficient under § 718.202(a)(4), but discussing the x-ray as one of several factors contributing to a reasonable diagnosis). Dr. Houser also performed numerous physical examinations of Garrett, and the ALJ could reasonably conclude that the extended treatment history gave Houser a superior understanding of Garrett's disease. Dr. Houser also performed several pulmonary capacity tests. Those tests, when combined with the x-rays, numerous physical examinations and Houser's discussion of pertinent medical literature, gave the ALJ sufficient grounds to accept Houser's conclusion as correct. *See Crockett Colleries, Inc. v. Barrett*, 478 F.3d 350, 352 (6th Cir. 2007) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation marks omitted)).

Island Creek argues that the ALJ failed to consider Dr. Houser's opinion in light of the other doctors' contrary conclusions. But the ALJ addressed each of those opinions, explaining why they

were undeserving of meaningful weight in his analysis—whether because he found them inconsistent with the premises of the Department of Labor's regulations, insufficiently explained or simply unpersuasive. The standard of review makes a difference in some cases, and this is one of them.

Island Creek, lastly, argues that Garrett's demonstration of total disability did not suffice to modify the earlier denial of benefits. But any error on this score was harmless. Even if the disability finding did not supply a conventional ground for modification, the ALJ's conclusion that Garrett demonstrated causation—a change from the earlier conclusion—clearly did. *See* 20 C.F.R. § 725.310(a) (permitting modification "on grounds of a change in conditions or because of a mistake in a determination of fact").

III.

For these reasons, we affirm.